[No. A049059. First Dist., Div. One. Mar. 21, 1991.]

THE PEOPLE, Plaintiff and Respondent, v.
BRIAN WAYNE TARVER, Defendant and Appellant.

**COUNSEL**

Diedre Jane Josephine Bush, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Richard B. Iglehart, Chief Assistant Attorney General, John H. Sugiyama, Assistant Attorney General, David Lew and Dane R. Gillette, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**NEWSOM, Acting P. J.**—Appellant was convicted of battery resulting in serious injury (Pen. Code §§ 242 and 243, subd. (d)), for inflicting a brutal and cowardly beating upon a man considerably smaller and 25 or 30 years older than himself. The victim of the battery was Roy Hunt, who, on the evening of August 31, 1989, "had a barbeque" at his house with Linda Graves and appellant. Graves was at that time renting an "extra bedroom" from Hunt, although she was preparing to move to another location. She had previously been, but apparently was no longer, appellant's girlfriend.

After eating dinner and drinking beer, Hunt, appellant and Graves visited the home of Jeannine Lorenz in the City of Clearlake. They appeared to Lorenz to be intoxicated when they arrived. Appellant and Hunt were disturbing Lorenz with their loud discussion, so at her request they went outside.

Hunt testified that he and appellant then stood by his truck and talked about Graves's relationships with Hunt and another man named "Ray,"

about which appellant expressed disapproval. Appellant also accused Hunt of providing drugs to Graves, a charge Hunt denied. Hunt told him "it was up to Linda what she wanted to do with her own life." He then said he "was going to go home and go to bed . . . ," and walked "towards the house." His next recollection was of awakening in the hospital with serious injuries to his face, including multiple facial fractures, two broken lower teeth, a fractured jaw which was no longer connected to the rest of the skull, as well as severe bruises and cuts.

Jeannine Lorenz testified that after Hunt and appellant left the house, only appellant returned. He had blood on his hands, and no longer seemed drunk. He told Graves "to go outside and look at her boyfriend. And that she wouldn't like that, what she'll see." Hunt was found outside on the ground, unconscious, and "beaten up badly in the face." When Graves tried to comfort Hunt, appellant warned her to "step away" "or he would hit him again." Graves did not immediately move, so appellant struck the unconscious Hunt once more in the face with his fist.

Later that night, Sergeant Gary Dick of the Clearlake Police Department spoke with appellant by telephone. The conversation was recorded and played for the jury. Appellant admitted hitting Hunt three or four times, but claimed that a week before Hunt had threatened him with a gun. Appellant also said Hunt threatened to shoot him again on the night of the assault, although appellant did not see the victim in possession of a gun.

Hunt testified that he did not have a gun in his possession, and never threatened to shoot appellant. Jeannine Lorenz did not see a gun that night at her house, or hear any mention of a gun. Sergeant Dick did not find a gun at the scene of the beating or in Hunt's truck.

█ Appellant complains that as an indigent criminal defendant he was entitled to a transcript of his first trial. He also maintains that denial of the transcript requires "automatic reversal." We reluctantly agree.

Equal protection principles demand that an indigent defendant be provided with "a transcript of prior proceedings when that transcript is needed for an effective defense . . . ." (*Britt* v. *North Carolina* (1971) 404 U.S. 226, 227 [30 L.Ed.2d 400, 403-404, 92 S.Ct. 431]; see also *Huffman* v. *Superior Court* (1990) 219 Cal.App.3d 1480, 1483 [269 Cal.Rptr. 12].) In *People* v. *Hosner* (1975) 15 Cal.3d 60, 66 [123 Cal.Rptr. 381, 538 P.2d 1141] (hereafter *Hosner*), our high court specifically ruled that an indigent defendant, upon timely motion, is presumptively entitled to a full transcript of a prior trial upon retrial. (See aso *Shuford* v. *Superior Court* (1974) 11 Cal.3d 903,

907 [114 Cal.Rptr. 601, 523 P.2d 641]; *Rutkowski* v. *Municipal Court* (1983) 146 Cal.App.3d 248, 250-251 [194 Cal.Rptr. 88].) The court in *Hosner,* declared: "[A]n indigent defendant in a criminal trial is *presumed* to have a particularized need for a transcript of prior proceedings, just as he is *presumed,* if he needs a transcript at all, to need nothing less than a complete transcript." (15 Cal.3d at p. 66.) The burden is on the prosecution to either overcome the presumption of need or show " 'the availability of alternative devices that would fulfill the same functions of a transcript.' " (*Id.* at p. 65, quoting from *Britt* v. *North Carolina, supra,* 404 U.S. at p. 227 [30 L.Ed.2d at p. 404]; see also *Huffman* v. *Superior Court, supra,* 219 Cal.App.3d at p. 1483.)

Appellant's request for a transcript was timely made only three days after his first trial, at a hearing set to schedule his retrial. (*Hosner, supra,* 15 Cal.3d at p. 64.) He was represented by the public defender, and so must be considered indigent for purposes of determining his right to a transcript. (*People* v. *Vaughn* (1981) 124 Cal.App.3d 1041, 1045 [177 Cal.Rptr. 773].)

Appellant was presumptively entitled to a transcript of his first trial; he also made a showing of necessity for the transcript to effectively cross-examine witnesses. (*Hosner, supra,* 15 Cal.3d at pp. 67-68.) The trial court clearly erred by demanding a further showing of need. (*Ibid.*) The People made no attempt to either overcome the presumption of need or show adequate alternative devices. (*People* v. *Coats* (1984) 154 Cal.App.3d 1153, 1155 [201 Cal.Rptr. 762].) Throughout the proceedings, the prosecutor remained unaccountably mute on the subject of appellant's right to a transcript. Absent any showing by the prosecution which might overcome appellant's presumptive need for a transcript, we conclude that error was committed. (*Hosner, supra,* at p. 69.)

The erroneous denial of appellant's motion for a transcript "requires automatic reversal." (*Hosner, supra,* 15 Cal.3d at p. 70; see also *People* v. *Bigelow* (1984) 37 Cal.3d 731, 745 [209 Cal.Rptr. 328, 691 P.2d 994]; *People* v. *Coats, supra,* 154 Cal.App.3d 1153, 1155; *People* v. *Vaughn, supra,* 124 Cal.App.3d 1041, 1045-1046.) As the Attorney General concedes this court must follow *Hosner* and reverse the judgment.[1]

---

[1] The automatic reversal rule of *Hosner* was based not on a finding that fundamental rights of the defendant are adversely affected in all cases by lack of a transcript, but upon practical considerations related to inability to determine the extent of the prejudice to the defendant. The court in *Hosner* stated: "The denial of the transcript does not merely taint some specific items of evidence, leaving other items which might of their own force provide overwhelming evidence of guilt beyond a reasonable doubt. Rather, in the manner of the denial of the assistance of counsel, the denial of a transcript of a former trial infects all the evidence offered at the latter trial, for there is no way of knowing to what extent adroit counsel assisted by the

The judgment is reversed, and the case is remanded to the trial court.

Stein, J., and Dossee, J., concurred.

---

transcript . . . might have been able to impeach or rebut any given item of evidence." (*Hosner, supra*, at p. 70.)

The present case illustrates the possible unfairness and inappropriateness of the *Hosner* reversal per se rule. The evidence against appellant was overwhelming. The case was a simple one, with few witnesses, and appellant was represented by the same counsel in both trials. The record is susceptible of a finding that no prejudice to appellant resulted from the lack of a transcript, even under the standard for errors of federal constitutional dimension. (*Chapman v. California* (1967) 386 U.S. 18, 24 [17 L.Ed.2d 705, 710-711, 87 S.Ct. 824, 24 A.L.R.3d 1065].) Where, as here, we can confidently assess the impact of the denial of the transcript and find it harmless beyond a reasonable doubt, we would depart from the *Hosner* reversal per se standard and affirm the conviction; but we are, of course, bound by *Hosner*, and have no choice but to reverse the judgment.