Filed 9/17/15

# CERTIFIED FOR PARTIAL PUBLICATION

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE, | B253610 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. TA125272) |
| v. | |
| KEITH RYAN REESE, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County. John T. Doyle, Judge. Affirmed.

Esther K. Hong, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Paul M. Roadarmel, Jr., and Nima Razfar, Deputy Attorneys General, for Plaintiff and Respondent.

_____

---

\*      Pursuant to California Rules of Court, rules 8.1100 and 8.1110, this opinion is certified for publication with the exception of parts II, III and IV.

Defendant and appellant Keith Ryan Reese was convicted of criminal threats, assault with a firearm, and being a felon in possession of a gun. He represented himself at a trial which ended in a hung jury. Prior to the retrial, Reese moved for a transcript of the first trial, and the trial court provided Reese with transcripts of the witnesses' testimony from the first trial. When Reese objected that he had not been provided with transcripts of the opening statements and closing arguments from the first trial, the trial court rejected his objection. At the conclusion of his second trial, a jury convicted Reese as charged. He contends he should have been provided with a transcript of opening statements and closing arguments. He also contends he was denied his right to compulsory process, that the trial court erred in denying his motion to dismiss a prior conviction and that his criminal threats convictions are not supported by insufficient evidence. We affirm.

**FACTS**

**The Crimes**

On October 4, 2012, Reese's mother, Beatrice Reese, and her brother, Bruce Reese, were at Beatrice's apartment with Fagasa Jackson and her baby daughter by Reese. At about 10:00 p.m., Reese arrived at the apartment and was upset because Beatrice had not picked him up from a friend's house. When Jackson became upset because Reese was supposed to be with her, and had not called or sent a text message, Beatrice began "giving [Reese] a hard time." At some point, Beatrice went out to the front of the apartment building and called 911.

Several Los Angeles Police Department (LAPD) officers responded to Beatrice's home, and detained and handcuffed Reese. Officer Manuel Azarte arrived at the property after Reese had already been handcuffed. Officer Azarte interviewed Beatrice, Bruce, and Jackson at the scene. The evidence regarding Officer Azarte's interviews showed the following facts: Beatrice and Reese were arguing when he pulled out a handgun, pointed it at her face, and told her something to the effect, "You're going to learn to stay out of other people's business." Reese had his finger on the trigger when he pointed the gun at

2

her, and was afraid. Beatrice did not say anything else to Reese because she did not want to incite him to further action.

Reese then pointed the gun at Jackson and said, "You disrespect me." Jackson began to say something to the effect, "Please don't do it." Beatrice was able to walk out of the apartment when Reese was engaged with Jackson. Once outside, Beatrice called 911.[1]

Officer Azarte showed Beatrice his gun and asked whether Reese's gun was like the officer's gun. Beatrice said no, that Reese's gun had a cylinder, unlike the officer's gun. All three witnesses — Beatrice, Bruce, and Jackson — were consistent that Reese had pulled out a gun and had pointed it first at Beatrice and then at Jackson. As Beatrice was relating the events to the officer, she seemed scared, but also in disbelief and at other times angry, as though she could not believe what had happened.

Officer Azarte and his partner searched the apartment, but did not find a gun. Officer Azarte's partner found a leather holster between a recliner and the wall in the living room area. A K9 officer, LAPD Officer Ramirez, responded to the apartment with his dog and also searched the apartment, but he, too, did not find a gun. The officers searched the one-bedroom apartment for 20 to 30 minutes.

### The Criminal Case

In November 2012, the People filed an information charging Reese with making a criminal threat against Beatrice and Jackson (counts 1 & 2; Pen. Code, § 422, subd. (a)),[2] and possession of a firearm by a felon (count 3; § 29800, subd. (a)(1)). Further, the information alleged that Reese personally used a firearm in the commission of the two criminal threats counts (§ 12022.5, subd. (a)) and that he had multiple prior strike convictions within the meaning of the "Three Strikes" law (§§ 667, subds. (b)-(i),

---

[1]     The prosecution played a recording of the 911 call for the jury. During the call, Beatrice told the operator that her son had pulled a gun on her, and that he was still inside the house with his girlfriend. In talking to the 911 operator, Beatrice stated: "I just don't want him to shoot that girl while he in there."

[2]     Further undesignated statutory references are to the Penal Code.

1170.12, subds. (a)-(d)). In December 2012, the People filed an amended information re-alleging the original charges, and also alleging that Reese had two prior strike convictions: assault with a firearm (§ 245, subd. (a)(2)) in Los Angeles County in 1995 and an assault with a firearm (§ 245, subd. (a)(2)) in Riverside County in 1989.

In his first trial, Reese's request to represent himself was granted. Before the beginning of testimony, the trial court granted the prosecution's s motion to amend the information to add two counts of assault with a firearm (counts 4 & 5; § 245, subd. (a)(2)). On April 11, 2013, the court declared a mistrial after the jury could not reach any verdicts.[3]

After the first trial, the prosecution filed an amended information which charged Reese with the same five counts discussed above. A personal firearm use enhancement was alleged as to the criminal threats and assault with a firearm counts. (§ 120225, subd. (a).) The amended information alleged that Reese suffered a prior conviction for assault with a deadly weapon in Riverside County in 1988 which qualified as a strike under the Three Strikes Law, and as a prior serious felony conviction under section 667, subdivision (a)(1).

At a second trial in June 2013, the prosecution presented evidence establishing the facts summarized above. The prosecutor called Beatrice, Bruce, and Jackson and questioned them about what they told Officer Arzate on the night of the events at Beatrice's house. All three denied telling the officer that Reese had a gun, made any threats, and that they had been in fear. Last, the prosecutor called Officer Azarte who testified to their statements at the scene. Reese did not present any defense evidence; he argued to the jurors that they should believe the in-court testimony and not Officer Arzate's information regarding what the witnesses had reported to him. The jury returned verdicts finding Reese guilty as charged and finding the firearm allegations to be true. The trial court thereafter found the prior conviction allegation true.

---

**3** The record indicates that jury voted nine for guilty and three for not guilty on each of the counts.

4

The trial court sentenced Reese to a total aggregate term of 17 years in state prison as follows: four years for his assault with a firearm conviction as alleged in count 4, doubled to eight years for the prior strike conviction, plus four years for the firearm enhancement, plus five years for the prior serious felony allegation. The court imposed concurrent prison terms on the remaining counts.[4]

Reese filed a timely notice of appeal.

## DISCUSSION

### I. The Trial Court Did Not Violate Reese's Right to Equal Protection by Denying Reese the Transcript of Opening Statements and Closing Arguments.

Reese was provided with the transcript of every witness who testified at his prior mistrial, but his request for a transcript of opening statements and closing argument was denied. Reese contends this violated his constitutional right to equal protection of the law. We disagree.

*Pertinent Background*

The court declared a mistrial in the first trial on April 11, 2013. On April 26, 2013, Reese filed a motion for a "complete record of trial transcripts" from the first trial, which the court granted. On June 6, 2013, he apparently received transcripts of the trial testimony only. On June 10, 2013, the day his second trial commenced, Reese argued that he had not received full trial transcripts and was "required to have" opening statements and closing arguments "so [he] [would not] make the same mistakes." The court denied the request, stating: "When you represent yourself, the court cannot

---

[4] Because the criminal threats convictions were based on the same acts as the assault with a deadly weapon charges, the sentence on those counts should have been imposed and stayed pursuant to section 654. The trial court must impose and stay execution of sentence on convictions for which multiple punishment is prohibited. (*People v. Pearson* (1986) 42 Cal.3d 352, 359-360.) The sentence imposed is unauthorized, so we are at liberty to correct it now. (*People v. Scott* (1994) 9 Cal.4th 331, 354-355.) Accordingly, the abstract of judgment is ordered modified to reflect counts one and two are stayed.

give you any favors.  You will be treated like a lawyer will be.  That's why people shouldn't represent themselves.  The motion to request the opening statement and closing arguments is denied.  That was denied previously.  That is not evidence."

Later that same day, defendant renewed his motion, and the court again denied it, saying:  "That's not part of the trial transcript which will be admissible in front of the jury.  Prior voir dire, opening statements and closing argument is not part of the transcript for another trial."  Reese argued:  "And I need those transcripts to not make the same mistakes because, you know, self-represented defendant is being taken advantage of."  The court replied:  "No, see, when you--when you decide to go pro per, you are a lawyer.  Nobody's taking advantage of you except you put yourself in position where you don't know what you're doing."  Reese renewed his request one more time, and once again the court denied it.  It explained:  "Well, as long as you have the testimony, that's what's important.  The--the jury selection, closing arguments, and all that is--you don't need for this trial.  I'm denying that."

***Pertinent Law***

As noted, Reese contends the denial of the transcript of opening statements and closing arguments violated his equal protection rights under the federal and state Constitutions.  Because the facts are not disputed, we independently review whether a constitutional violation has occurred.  (*People v. Uribe* (2011) 199 Cal.App.4th 836, 856-857.)

We begin with *Britt v. North Carolina* (1971) 404 U.S. 226, 227 (*Britt*), in which the United States Supreme Court recognized the fundamental and familiar principle that "the State must, as a matter of equal protection, provide indigent prisoners with the basic tools of an adequate defense or appeal, when those tools are available for a price to other prisoners."  The court cited cases establishing that principle means "there can be no doubt the State must provide an indigent defendant with a transcript of prior proceedings when that transcript is needed for an effective defense or appeal."  (*Ibid.*, fn. 1.)  The "prior proceedings" at issue in *Britt* were a prior trial that had ended in a mistrial, and the lower court had denied the defendant's request for a transcript of the mistrial as he was

6

preparing for the new trial. (*Id.* at p. 226.) *Britt* explained why, "in the narrow circumstances of this case, no violation of [equal protection] has been shown." (*Id.* at p. 227.)

Britt framed the equal protection issue this way: "The question here is whether the state court properly determined that the transcript requested in this case was not needed for an effective defense." (*Britt*, *supra*, 404 U.S. at p. 227.) The court recited the two factors that are relevant to the determination of need: "(1) the value of the transcript to the defendant in connection with the appeal or trial for which it is sought, and (2) the availability of alternative devices that would fulfill the same functions as a transcript." (*Id.* at p. 228, fn. omitted.) As to the first factor, *Britt* observed: "Our cases have consistently recognized the value to a defendant of a transcript of prior proceedings, without requiring a showing of need tailored to the facts of the particular case. . . . [E]ven in the absence of specific allegations it can ordinarily be assumed that a transcript of a prior mistrial would be valuable to the defendant in at least two ways: as a discovery device in preparation for trial, and as a tool at the trial itself for the impeachment of prosecution witnesses." (*Ibid.*, fn. omitted.) *Britt*'s references to discovery and impeachment suggest the equal protection question related to defendant's right to obtain a transcript of the *testimony*.

Based on the second factor, the *Britt* court found, even though defendant was deprived of the discovery and impeachment opportunities a transcript provides, there was no violation of defendant's equal protection rights, because there was an adequate alternative to a transcript. The court found defendant's equal protection rights were adequately protected because the trials took place in a small town, the same court reporter worked on both trials, the court reporter was a "good friend of all the local lawyers," and the reporter would have read back his notes of the mistrial at any time if counsel had informally requested it. (*Britt*, *supra*, 404 U.S. at p. 229.)

7

Our Supreme Court took up this issue in *Shuford v. Superior Court* (1974) 11 Cal.3d 903 (*Shuford*), another case in which the indigent defendant sought and was denied a transcript of a prior mistrial. The prosecution had a transcript of defense witnesses' testimony at the prior trial. The defendant moved for a full transcript and argued "that a study of a transcript of the entire proceedings was necessary for a proper preparation of his defense on the retrial." (*Id.* at p. 905.) In support of his motion, defendant provided an affidavit of the Chief Deputy Public Defender of Orange County, declaring in pertinent part that: "[I]t has been the practice of the public defender's office, in the case of defendants represented by that office in which a jury has not been able to reach a verdict in the first trial, to obtain a transcript of the evidence of the first trial, or relevant portions thereof, before commencing the second trial whenever the attorney believed it would be helpful in his representation of the defendant. . . ." (*Id*. at pp. 905-906.)

Relying on *Britt* and other United States Supreme Court precedent, *Shuford* held that the indigent defendant whose trial ends in a hung jury is entitled to a transcript at government expense to help the defendant prepare for a new trial. (*Shuford*, *supra*, 11 Cal.3d at p. 906.) The court issued a writ of prohibition directing the lower court to vacate its order denying the defendant's motion for a transcript. (*Id.* at p. 907.) The court did *not* decide whether defendant was entitled to the complete transcript he requested, or only a portion of the transcript, leaving that question to be decided by the trial court. (*Ibid*.)

*Shuford* quoted with approval from *Mayer v. City of Chicago* (1971) 404 U.S. 189 (*Mayer*), a case involving an indigent defendant's right to a subsidized transcript *on direct appeal*: "'A "record of sufficient completeness" does not translate automatically into a complete verbatim transcript. . . .'" (*Shuford*, *supra*, 11 Cal.3d at p. 907, quoting *Mayer*, at p. 194.) *Shuford* further quoted with approval from *Mayer*: "'We emphasize, however, that the State must provide a full verbatim record where that is necessary to assure the indigent as effective an appeal as would be available to the defendant with resources to pay his own way. Moreover, where the grounds of appeal, as in this case,

8

make out a colorable need for a complete transcript, the burden is on the State to show that only a portion of the transcript or an "alternative" will suffice for an effective appeal on those grounds.'" (*Shuford*, at p. 907, quoting *Mayer*, at pp. 194-195.)

There was a "colorable need" for a complete transcript in *Mayer* because defendant wished to assert on appeal that insufficient evidence supported the conviction, and prosecutorial misconduct. (*Mayer*, *supra*, 404 U.S. at p. 190.) A defendant ordinarily would need the entire transcript of testimony to effectively argue insufficient evidence supported the verdict. And a defendant ordinarily would need a transcript of all proceedings during which the prosecutor allegedly committed misconduct. The need for a transcript for appeal is analogous, though not the same as the need for a transcript of a mistrial. *Shuford*'s reliance on *Mayer* tells us that, like a defendant seeking to appeal a conviction, a defendant facing a new trial is entitled to as much of the transcript as is necessary to assure an effective defense on retrial, and when defendant has made a "colorable" showing of a need for a complete transcript before retrial, the burden is on the prosecution to show a portion of the transcript is sufficient to ensure a fair trial.

Not long after *Shuford*, our Supreme Court revisited this issue in *People v. Hosner* (1975) 15 Cal.3d 60 (*Hosner*). As in *Britt* and *Shuford*, the indigent defendant in *Hosner* was facing a second trial after a mistrial. Defendant moved for a transcript of the mistrial, and the trial court denied the motion. (*Hosner*, at p. 62.) The defendant's motion in *Hosner* argued that he needed the transcript of the first trial because it was "necessary for counsel 'to properly impeach, or to properly cross-examine the eight or nine witnesses who testified at the first trial. The testimony differed in some cases greatly, and in some cases less than greatly from the information provided to the Grand Jury, the police department, and in all the preliminary hearings prior to the trial.' Defendant also made an independent request for whatever part of the record of the prior trial had been transcribed for the prosecution." (*Hosner*, at p. 67.) The prosecution agreed to give defendant the portion of testimony in their possession from the first trial, which was only a small part of defendant's testimony. (*Id*. at p. 68.)

9

In *Hosner*, the Supreme Court answered "[t]he question not presented in *Shuford* [which] is now before us:  what showing of particularized need, if any, must an indigent defendant make in order to become entitled to a free transcript of prior proceedings." (*Hosner*, *supra*, 15 Cal.3d at p. 66.)  It held "an indigent defendant in a criminal trial is *presumed* to have a particularized need for a transcript of prior proceedings, just as he is *presumed*, if he needs a transcript at all, to need nothing less than a complete transcript." (*Ibid*.)  The court must grant the defendant's motion unless the prosecution rebuts the presumption of defendant's "need for the transcript and of the unavailability of adequate alternative devices." (*Ibid.*)  To the extent there is a dispute about whether a full transcript is necessary, the prosecution also has the burden of showing that the defendant would have an effective defense with anything less than a complete transcript.  (*Id.* at p. 64.)

Under *Hosner*, error in failing to provide a complete transcript requires automatic reversal.  (*Hosner*, *supra*, 15 Cal.3d at p. 70.)  The court held that "[t]he denial of the transcript does not merely taint some specific items of evidence, leaving other items which might of their own force provide overwhelming evidence of guilt beyond a reasonable doubt.  Rather, in the manner of the denial of the assistance of counsel, the denial of a transcript of a former trial infects all the evidence offered at the latter trial, for there is no way of knowing to what extent adroit counsel assisted by the transcript to which the defendant was entitled might have been able to impeach or rebut any given item of evidence.  Even if an appellate court were to undertake the extraordinary burden of reviewing the records of both trials, the court would be able only to hypothesize what use at the latter trial could have been made of the transcript of the former trial." (*Ibid*.)  The court recognized that reviewing courts often employ some speculation when considering how an average jury would have decided a case absent error, but the denial of a transcript introduced "an entirely new level of compound conjecture." (*Ibid*.)  The reviewing court would have to first speculate about what evidence the defendant might have impeached or rebutted, and then speculate about how the jury would have reacted to

10

those speculative efforts. (*Ibid.*) The court characterized this as "speculation running riot." (*Ibid.*) Thus, a per se rule of prejudice was appropriate.

Reese in this case argues the many references in *Hosner* to his presumed right to a "full" and "complete" transcript establish that he has a presumptive right to opening statements and closing arguments. We are not persuaded the court erred in this case by providing a transcript of all the evidence at the mistrial, but not opening statements and closing arguments. The many references in *Hosner* to the right to a "full" and "complete" transcript must be understood in the context of the facts and issues that were before the court. The only part of the transcript given to the defense in *Hosner* was a small part of defendant's own testimony at the first trial, which obviously had no impeachment or rebuttal value to the defense whatsoever. In stark contrast, Reese in this case received *all* of the testimony of *all* of the witnesses.

"'"It is axiomatic that language in a judicial opinion is to be understood in accordance with the facts and issues before the court. An opinion is not authority for propositions not considered."' [Citations.] 'An appellate decision is not authority for everything said in the court's opinion but only "for the points actually involved and actually decided."'" (*People v. Knoller* (2007) 41 Cal.4th 139, 154-155.)

The facts before the court in *Hosner* were that defendant was given only a small part of his own testimony at the mistrial, and none of the prosecution witnesses' testimony. The facts in the previous opinions that were discussed in *Hosner* similarly involved the denial of the transcript of testimony. In *Britt*, the defendant was not given *any part* of the transcript of the mistrial, yet the high court found no equal protection violation because the same court reporter transcribed the second trial and was available to read back his notes from the first trial. In *Shuford*, it is not clear from the opinion whether the prosecution provided to defendant a copy of the transcript of the defense testimony that the prosecution had in its possession, but it is clear defendant was *not* given the transcript of the testimony of prosecution witnesses. Yet *Shuford* did not hold the defense was entitled to a complete transcript of the mistrial, leaving to the trial court to decide on remand whether defendant was entitled to only a portion of the transcript.

11

The equal protection issue in each of these opinions focused on a defendant's right to a complete transcript of all the testimony in order to effectively rebut the prosecution case and impeach prosecution witnesses.

Reese asks us to expand the limits of the principles set forth in *Britt*, *Shuford*, and *Hosner* to require that the state provide transcripts of the opening statements and closing arguments in every case. We decline to do so. *Britt*, the seminal case on this issue, tells us "the outer limits" of the principle that the state must, as a matter of equal protection, provide indigent defendants with the basic tools of an adequate defense "are not clear." (*Britt*, *supra*, 404 U.S. at p. 227.) Similarly, the *Hosner* court expressly reserved decision on whether the per se rule of reversal would apply to an erroneous denial of a transcript of "some other prior proceeding [citation], such as a hearing on a motion to suppress [citation], a hearing on the voluntariness of a confession [citation], or a preliminary hearing which resulted in the defendant's discharge from custody." (*Hosner*, *supra*, 15 Cal.3d at p. 71, fn. 7.)

Further, we do not believe the *Hosner* per se rule of reversal was intended to apply in this case, where defendant received a transcript of all the testimony, and explained his request for the opening statements and closing arguments only by saying he needed them "to not make the same mistakes." Defendant was not required to specify how the transcript of testimony might aid his defense, because *Hosner* and the four decades of high court precedent establish without question his equal protection right to a transcript of the testimony. But the defendant who requests other parts of the transcript without specifying why it is necessary to an effective defense may not invoke the *Hosner* rule of automatic reversal.

The dissent advocates for the defense (without citation to any supporting facts in the record in this case) that the transcript of opening statements and closing arguments may be valuable "as a tool to help identify the prosecution's key arguments, identify potential weaknesses in its case, assess the relative weight the prosecution would place on items of evidence, and better determine what appellant would need to refute them." (Dis. opn. *post,* at pp. 4-5.) Thus, the dissent argues, it is logical to assume from *Hosner*

12

that a defendant facing retrial needs not only witness testimony but also the statements of counsel. We do not believe it is logical to presume from *Hosner* a violation of equal protection mandating reversal where defendant made no showing in the trial court that the statements of counsel had any value in preparing for the retrial in this case.

The dissent observes that it may not be said categorically that a transcript is "complete" without the statements of counsel. (Dis. opn. *post,* at p. 3.) We agree there is no categorical rule that an indigent defendant after mistrial is only entitled to a transcript of testimony in every case. There may be a case where something more than witness testimony is required to prepare an adequate defense on retrial. On the other hand, we are not persuaded that *Hosner* establishes a categorical rule that the transcript of counsel's statements must be provided after *every* mistrial.[5]

We recognize that a majority of a panel of the Ninth Circuit Court of Appeals in *Kennedy v. Lockyer* (9th Cir. 2004) 379 F.3d 1041 (*Kennedy*), rejected the argument that *Britt* requires the state to provide an indigent defendant only a transcript of testimony of a mistrial, and not other proceedings. (*Kennedy*, at pp. 1046-1047, quoting *Britt*, *supra*, 404 U.S. at p. 227.) After a mistrial in California superior court, Kennedy, an indigent defendant, moved for a complete trial transcript to prepare for his retrial, including opening statements, closing arguments and other proceedings. (*Kennedy*, at p. 1044.) Kennedy received only a transcript of the witnesses' testimony. (*Id.* at p. 1045.) The California Court of Appeal affirmed Kennedy's conviction, and our Supreme Court denied review. Kennedy filed a habeas corpus petition in federal court, which the Ninth Circuit held should have been granted. (*Id.* at pp. 1046, 1057.)

---

[5]     Perhaps there should be a uniform rule requiring the state to provide an indigent defendant with the transcript of opening statements, closing arguments, and other proceedings, in addition to the testimony, as a matter of good policy and procedure, However, *Hosner* does not establish that rule as constitutionally required after every mistrial.

13

Of course, decisions of intermediate federal courts are not binding on us, even on matters of federal constitutional law. (*Raven v. Deukmejian* (1990) 52 Cal.3d 336, 352.) On the other hand, federal opinions are often instructive. Having carefully considered *Kennedy*, we find the dissent to be far more instructive than the majority. We agree with the dissent that the majority in *Kennedy* erred in finding the denial of a transcript of parts of the mistrial that might be *useful* is the same as denying a transcript of that which is *necessary* to an effective defense. (See, e.g., *Kennedy*, *supra*, 379 F.3d at pp. 1059, 1061, fn. omitted (dis. opn. of O'Scannlain, J.) ["The majority cites no Supreme Court case that extends *Britt* beyond a requirement that a transcript of all *testimonial* evidence adduced in prior proceedings be made available to indigent defendants; it finds its clearly established Supreme Court precedent not in the *U.S. Reports*, but in *Black's Law Dictionary*. . . . At bottom, the majority offers only a thinly-reasoned justification to support its extension of precedent beyond that clearly established by the Supreme Court."].)

And, while we do not know why our Supreme Court denied review of Kennedy's appeal, we note that the opinion of the lower appellate court extensively explained why *Hosner* did not mandate reversal where the defendant received a transcript of the testimony but no other proceedings. We would expect our Supreme Court ordinarily would review a decision that resulted in a deprivation of an indigent prisoner's right to equal protection. (See *Kennedy*, *supra*, 379 F.3d at p. 1069 (dis. opn. of O'Scannlain, J.) ["Notwithstanding the eminent reasonableness of their colleagues' analysis, two judges today inform seven others—a state trial judge, three state appellate judges, a federal magistrate judge, a federal district court judge, and a federal appellate judge (and that's not to mention the seven Justices of the California Supreme Court who summarily denied Kennedy's state petition for review)—that their understanding of the law is contrary to clearly established Supreme Court precedent."].)

We find it significant that the majority in *Kennedy* held a harmless error analysis applies where a defendant is provided the transcript of testimony but not of other proceedings. (*Kennedy*, *supra*, 379 F.3d at p. 1053.) *Hosner*, on the other hand, tells us a

14

per se rule of prejudice applies, mandating reversal, when a defendant's equal protection rights are violated by the denial of the complete transcript. We do not believe the *Hosner* court intended to apply a per se rule of reversal where a defendant received a full and complete transcript of the testimony in the mistrial, and defendant's request for the statements of counsel does not specify why they are necessary to an effective defense.

Recent decisions of the United States and California Supreme Courts recognize that errors requiring automatic reversal—structural error—are the exception rather than the rule. As our high court recently explained in *People v. Anzalone* (2013) 56 Cal.4th 545, errors not subject to the California constitutional harmless error standard of *People v. Watson* (1956) 46 Cal.2d 818, are those that ""''"regardless of the evidence, may result in a 'miscarriage of justice' because they operate to deny a criminal defendant the constitutionally required 'orderly legal procedure' . . . .''" [I]t will be the rare case where a constitutional violation will not be subject to harmless error analysis." (*Anzalone*, at pp. 553-554; see also *Neder v. United States* (1999) 527 U.S. 1, 8-9; *People v. Mil* (2012) 53 Cal.4th 400, 410.)

This simply is not such a rare case. We find no violation of equal protection in the trial court's decision to deny a transcript of opening statements and closing arguments.

We do not intend to suggest we are free to conduct a harmless error review in a case governed by *Hosner*. Plainly, if there is *Hosner* error, reversal is mandated. We hold that there was no *Hosner* error in this case, because defendant was provided the transcript of all the testimony and did not demonstrate why he needed the opening statements and closing arguments.

## II. There Was No Denial of Reese's Sixth Amendment Right to Compulsory Process

Reese contends all of his convictions must be reversed because he was denied his Sixth Amendment right to compulsory process. He claims the prosecutor represented he would secure Officer Ramirez's presence at court and failed to do so. Further, he claims that the trial court improperly denied his requests for a body attachment and continuance. We find no error.

15

Just before opening statements, the trial court asked Reese to disclose to the prosecutor the name of any witnesses that he intended to call at trial. Reese indicated he did not have that information, and noted further that the prosecutor already had the contact information on the K-9 handler, Officer Ramirez, whom Reese expected to call as a witness. When the prosecutor informed Reese that the K-9 handler was on vacation, Reese said he needed the dog handler to testify that the apartment he searched was small and there was nowhere to hide a gun. The court indicated that Reese could call his mother or other witnesses to testify about the size of the apartment. Later in trial, just before Reese was to present his defense, he moved for a body attachment for Officer Ramirez. At the same time, Reese moved to continue the trial for five days until the officer returned from vacation, and, in the event his requests were denied, for a mistrial. The court found the testimony of Officer Ramirez was cumulative of Officer Azarte, who testified that he searched the apartment and found no gun. The trial court then denied all of Reese's motions.

Under the "compulsory process" clauses of the federal and state constitutions, a defendant has a constitutional right to compel the testimony of a witness who has evidence favorable to the defense. (*People v. Jacinto* (2010) 49 Cal.4th 263, 268-269.) To prevail on a claim that the right to compulsory process was violated, a defendant must establish that the prosecution engaged in conduct that was entirely unnecessary to the proper performance of its duties, that the conduct was a substantial cause of the loss of the witness's testimony, and that the testimony would have been material and favorable to the defense. (*In re Martin* (1987) 44 Cal.3d 1, 31-32.) When reviewing Reese's claim that his compulsory process rights were violated, we use the standard generally applied to issues involving constitutional rights. That is, we defer to the trial court's factual findings where they are supported by substantial evidence, and independently review the historical facts to determine whether a constitutional violation occurred. (See *People v. Cromer* (2001) 24 Cal.4th 889, 894, 900-901; *People v. Seijas* (2005) 36 Cal.4th 291, 304.)

16

As regards the right to a mid-trial continuance, our Supreme Court has held: "A motion for continuance should be granted only on a showing of good cause. . . . The trial court has substantial discretion in ruling on midtrial motions to continue a case, and appellate challenges to a trial court's denial of such a motion are rarely successful. [Citations.]" (*People v. Seaton* (2001) 26 Cal.4th 598, 660.) Further: "When a continuance is sought to secure the attendance of a witness, the defendant must establish 'he had exercised due diligence to secure the witness's attendance, that the witness's expected testimony was material and not cumulative, that the testimony could be obtained within a reasonable time, and that the facts to which the witness would testify could not otherwise be proven.' [Citation.] The court considers "'not only the benefit which the moving party anticipates but also the likelihood that such benefit will result, the burden on other witnesses, jurors and the court and, above all, whether substantial justice will be accomplished or defeated by a granting of the motion.'" [Citation.] A trial court's denial of a motion for continuance is reviewed for abuse of discretion. [Citation.]" (*People v. Jenkins* (2000) 22 Cal.4th 900, 1037; accord, *People v. Doolin* (2009) 45 Cal.4th 390, 450.)

We find no violation of compulsory process because Reese has not demonstrated that Officer Ramirez's testimony would have been material and favorable to the defense. (*In re Martin, supra,* 44 Cal.3d at p. 32.) Multiple witnesses testified that no gun was found in Beatrice's apartment. Indeed, that fact is undisputed. Reese had available to him multiple witnesses to testify to the size of the apartment. For similar reasons, we find no abuse of discretion in denying the midtrial request for continuance. Again, Officer Ramirez's testimony was undoubtedly cumulative of Officer Azarte and the other witnesses available to Reese. For all of these reasons, we also reject Reese's constitutional argument that his right to due process — a fair trial — was violated by not awaiting Officer Ramirez's testimony.

17

### III. The *Sumstine*[6] Motion

Reese contends all of his convictions must be reversed because the trial court erred in denying his *Sumstine* motion. Again, we find no error.

As noted at the outset of this opinion, the amended information alleged that Reese was previously convicted of assault with a deadly weapon in 1988 in Riverside County. After the jury's verdicts, a bifurcated court trial ensued on the prior conviction. The trial court found the prior conviction to be true and that it qualified as a strike pursuant to the Three Strikes law.[7] The evidence supporting the trial court's finding included a copy of an abstract of judgment reflecting that Reese had pleaded guilty to the offense of assault with a deadly weapon in 1988.

Just prior to sentencing, Reese filed a *Sumstine* motion in which he requested an order "striking [his] prior strike conviction" on the ground that he had not been properly advised of his constitutional trial rights before he entered his plea in 1988. Reese supported his motion with a personal declaration denying that he had been advised of his constitutional trial rights. The trial court heard argument on the motion. At that time, Reese offered a letter from the Riverside County Superior Court which indicated that after a search of their records, they could not find any record of his case. At the end of the hearing, the court denied Reese's *Sumstine* motion.

In *Sumstine*, the Supreme Court held that a defendant may collaterally attack the validity of a prior felony conviction entered pursuant to a plea if he was not advised of his constitutional *Boykin-Tahl* rights at the time of the plea. (*Boykin v. Alabama* (1969) 395 U.S. 238; *In re Tahl* (1969) 1 Cal.3d 122 (*Boykin-Tahl*).) The Supreme Court has summarized the *Sumstine* procedure as follows: "When a defendant makes sufficient allegations that his conviction, by plea, in the prior felony proceedings was obtained in

---

[6]     *People v. Sumstine* (1984) 36 Cal.3d 909, 918-919 (*Sumstine*).

[7]     We note that, during trial, in front of the jury, Reese stipulated that he had suffered the prior felony conviction. Reese agreed during trial that the stipulation would be offered to the jury for purposes of a foundational element — a prior felony conviction — as to the firearm possession by a convicted felon count.

18

violation of his constitutional *Boykin-Tahl* rights, the trial court must hold an evidentiary hearing. At the hearing, the prosecution bears the initial burden of producing evidence that the defendant did indeed suffer the conviction. The defendant must then produce evidence to demonstrate his *Boykin-Tahl* rights were infringed. The prosecution then has the right to rebuttal, at which point reliance on a silent record will not be sufficient." (*People v. Allen* (1999) 21 Cal.4th 424, 435.)

We find no error here because Reese's *Sumstine* motion did not contain sufficient allegations that his conviction was obtained in violation of his constitutional *Boykin-Tahl* rights, and did not contain sufficient allegations that he would not have pleaded guilty had he received the advisements which he claims he did not. Even generously construed, the *Sumstine* motion made no more showing than a conclusory claim of inadequate *Boykin-Tahl* advisements, without an explanation of the precise manner in which they failed to live up to legal requirements. Such vague and conclusory allegations do not warrant relief under *Sumstine*. (*Sumstine, supra*, 36 Cal.3d at p. 924; *People v. Soto* (1996) 46 Cal.App.4th 1596, 1601 (*Soto*).) More importantly, Reese did not declare that he would not have pleaded guilty had he known of his *Boykin-Tahl* rights. (See *Soto,* at pp. 1605-1606.) Indeed, at the hearing in the trial court, Reese took the tactic of arguing that he had never actually been convicted. This is more of a sufficiency of the evidence issue than a *Sumstine* issue. We find no error.

## IV. Substantial Evidence Supports the Criminal Threats Counts

Reese contends the evidence is insufficient to support his convictions for making criminal threats as alleged in counts 1 and 2. We disagree.

In reviewing a claim of insufficient evidence, an appellate court must examine the record in the light most favorable to the judgment, and determine whether it contains evidence that is reasonable, credible, and of solid value that any rational trier of fact could find each element of the crime beyond a reasonable doubt. (*Jackson v. Virginia* (1979) 443 U.S. 307, 319; *People v. Staten* (2000) 24 Cal.4th 434, 460; *People v. Bolin* (1998) 18 Cal.4th 297, 331 (*Bolin*).) A reviewing court's function is not to resolve credibility issues or evidentiary conflicts. (*People v. Zamudio* (2008) 43 Cal.4th 327,

19

357.) When the trial evidence "reasonably justify the jury's finding as to each element of the offense, the judgment may not be overturned when the circumstances might also reasonably support a contrary finding." (*People v. Lewis* (2001) 25 Cal.4th 610, 643-644). The testimony of a single witness, provided that it is not inherently incredible or physically impossible, is sufficient to support a verdict. (*People v. Young* (2005) 34 Cal.4th 1149, 1181.)

Two statements by Reese are at issue here. First, his statement to Beatrice: "You're going to learn to stay out of other people's business." Second, his statement to Jackson: "You disrespect me." The issue presented by Reese is whether either statement conveyed a gravity of purpose and immediate prospect of being carried out. (*People v. Bolin, supra,* 18 Cal.4th 297, 339.) The Supreme Court has held that, in determining whether a particular statement will support a conviction for making a criminal threat, a statement that is ambiguous on its face "may nonetheless be found to be a criminal threat if the surrounding circumstances clarify the communication's meaning." (*In re George T.* (2004) 33 Cal.4th 620, 635.) Further, the Supreme Court has held that "prosecution under section 422 does not require [proof of] an *unconditional* threat of death or great bodily injury." (*Bolin*, *supra*, 18 Cal.4th at p. 338, fn. omitted, italics added.) Thus, a "conditional threat" is a criminal threat when its context "reasonably conveys to the victim that [it is] intended . . . ." (*People v. Brooks* (1994) 26 Cal.App.4th 142, 149.)

The record supports Reese's criminal threats conviction as to Beatrice. The trial evidence showed that, while Reese was pointing a gun at his mother's face, he stated, "You're going to learn to stay out of other people's business." The surrounding circumstances clarify that Reese was telling his mother that he was going to shoot her for getting involved in his private affairs. The same may be said with respect to Reese's criminal threat conviction as to Jackson. The evidence showed that, while Reese was pointing a gun at Jackson, he stated, "You disrespect me." The surrounding circumstances clarify that Reese was telling his girlfriend that he was going to shoot her for arguing with him. Reese's use of a gun gave meaning to the words and conveyed the

20

seriousness of the threat, making it reasonable for Beatrice and Jackson to perceive a conveyed threat.

To defeat this conclusion, Reese argues the jury unreasonably inferred that his words, accompanied by the pointing of a gun, constituted criminal threats. His argument largely relies on *Bolin*, *supra*, 18 Cal.4th 297, and similar cases. He claims those cases support the proposition that "menacing words" alone constitute something less than a criminal threat, and that the words must show a true and intended threat. Reese also argues under *Watts v. United States* (1969) 394 U.S. 705, 707-708 (*Watts*), that his criminal threats conviction cannot stand because his words were in the form of protected speech. In *Watts*, the Supreme Court found a defendant's conditional threat statements in the context of a political rally where he stated that if he was drafted and forced to carry a rifle, the President would be the first person in his sights. (*Id*. at pp. 706-707.)

We are not persuaded to find insufficient evidence because the facts of Reese's case are different in kind from those involved in *Bolin* and its progeny and those in *Watts*. We do not see mere menacing words, and we see nothing in Reese's current case which remotely resembles the situation in *Watts,* where protected speech was involved.

**DISPOSITION**

The judgment is affirmed.


GRIMES, J.

I concur:



BIGELOW, P. J.



21

*People v. Reese*
B253610

**FLIER, J., Dissenting**

I respectfully dissent.  I would hold that denying appellant a transcript of opening statements and closing arguments from the mistrial was error under *People v. Hosner* (1975) 15 Cal.3d 60, 62 (*Hosner*), and *Hosner* requires automatic reversal.  "Providing equal justice for poor and rich, weak and powerful alike is an age-old problem.  People have never ceased to hope and strive to move closer to that goal.  [O]ur own constitutional guaranties of due process and equal protection both call for procedures in criminal trials which allow no invidious discriminations between persons and different groups of persons.  Both equal protection and due process emphasize the central aim of our entire judicial system—all people charged with crime must, so far as the law is concerned, 'stand on an equality before the bar of justice in every American court.'" (*Griffin v. Illinois* (1956) 351 U.S. 12, 16-17, fn. omitted.)  "There can be no equal justice where the kind of trial a man gets depends on the amount of money he has." (*Id.* at p. 19.)  Thus, the state should provide indigent prisoners with the basic tools of an adequate defense when those same tools are available for a price to other prisoners. (*Britt v. North Carolina* (1971) 404 U.S. 226, 227 (*Britt*).)

It is this bedrock right to equal protection of the law that underlies our Supreme Court's decision in *Hosner*.  *Hosner* held that, as a matter of equal protection, an indigent defendant is *presumptively* entitled to a free "complete transcript" of a mistrial in preparing for retrial (*Hosner, supra*, 15 Cal.3d at pp. 62, 66; *Shuford v. Superior Court* (1974) 11 Cal.3d 903, 906 (*Shuford*).)  *Hosner* soundly rejected the notion that a defendant should have to show a particularized need for the complete transcript of a mistrial:  "[A]n indigent defendant in a criminal trial is *presumed* to have a particularized need for a transcript of prior proceedings, just as he is *presumed*, if he needs a transcript at all, to need nothing less than a complete transcript." (*Hosner, supra*, 15 Cal.3d at

1

p. 66.)  The prosecution bears the burden of showing the defendant would have an effective defense with something less than a complete transcript.  (*Id.* at p. 64.)

Here, the prosecution did nothing to rebut the presumption that appellant needed a complete transcript of the mistrial, including the opening statements and closing arguments that he expressly requested.  If the prosecution does not make the requisite showing, denying appellant's motion for a complete transcript of the mistrial abridges his constitutional right to equal protection of the laws and constitutes reversible error.  (*Hosner, supra*, 15 Cal.3d at p. 64; *People v. Tarver* (1991) 228 Cal.App.3d 954, 957 [when prosecution remained "unaccountably mute on the subject of appellant's right to a transcript," presumption was not overcome, and denial of motion for trial transcripts was error requiring reversal].)

The majority holds that *Hosner* does not compel reversal because *Hosner* must be understood in the context of the facts and issues that were before the court, and there, the defendant received only a small portion of his prior testimony and nothing else.  (*Hosner, supra*, 15 Cal.3d at p. 68.)  The majority suggests that *Hosner*'s presumption of need extends only to witness testimony from the mistrial, but for opening statements and closing arguments, appellant must demonstrate why he needs them for an effective defense.

*Hosner* should not be read so narrowly.  I recognize that *Hosner* and the cases on which it relied—*Shuford* and *Britt*—involved distinguishable facts insofar as the defendants in those cases received no transcript at all or only some small portion of the prior testimony.  (*Britt, supra*, 404 U.S. at pp. 226-227; *Shuford, supra*, 11 Cal.3d at p. 905.)  But I see no basis on which to conclude that *Hosner*'s rebuttable presumption of need should not apply to the slightly different facts in this case.  That is, when *Hosner* says an indigent defendant is presumptively entitled to a "complete" and "full" transcript of a mistrial in preparing for retrial (*Hosner, supra*, 15 Cal.3d at pp. 65, 66, 68, 69), I do not find a need to parse the opening statements and closing arguments from the rest of what the jury heard and treat these parts of the trial differently.

The opening statements and closing arguments are no less a part of a trial than the witness testimony. To be sure, they are different from witness testimony in that counsel's statements are not evidence. (CALCRIM Nos. 104, 222.) But these parts of the trial are counsels' opportunity to talk to the jury about what the evidence will or does show, to comment on and interpret the evidence, and to argue to the jury why it should decide the case in their client's favor. One cannot say categorically that a trial is "complete" without these parts of the trial.

Moreover, I am unpersuaded by respondent's argument that we should not consider opening statements and closing arguments on the same footing with trial testimony because they are "not of critical value" on retrial of the same charges, cannot be used to impeach witnesses, and do not advance the underlying goals of *Hosner*. While these nontestimonial portions of the trial may not be as valuable as witness testimony in *all* cases, and appellant cannot use them to impeach witnesses, I disagree that they do not advance the underlying goals of *Hosner*. *Hosner* appreciates the importance of the complete trial transcript *both* for its impeachment value *and* its rebuttal value. (E.g., *Hosner, supra*, 15 Cal.3d at p. 70 ["[T]here is no way of knowing to what extent adroit counsel assisted by the transcript to which the defendant was entitled might have been able to impeach or rebut any given item of evidence."].) Impeachment and rebuttal are not always the same thing. A witness's prior inconsistent testimony obviously is valuable as impeachment evidence to discredit that witness. Although impeaching witnesses may be one way to rebut an adversary's case, rebuttal may certainly take other forms. To rebut simply means "[t]o refute, oppose, or counteract (something) by evidence, argument, or contrary proof." (Black's Law Dict. (7th ed. 1999) p. 1274, col. 1.) Thus, a witness's prior testimony is not the only way to rebut the prosecution's case.

The court's discussion in *Kennedy v. Lockyer* (9th Cir. 2004) 379 F.3d 1041 (*Kennedy*) is instructive on the value of the opening statements and closing arguments. After a mistrial in state court, Kennedy, an indigent defendant, moved for a complete trial transcript to prepare for his retrial, including opening statements and closing arguments. (*Id.* at p. 1044.) Kennedy received a transcript of the witnesses' testimony, but nothing

3

more. (*Id.* at p. 1045.) Applying federal court precedent (*Britt*) in a habeas corpus proceeding, the Ninth Circuit determined that Kennedy's right to "'a transcript of *prior proceedings* when that transcript is needed for an effective defense or appeal'" included not just the witnesses' testimony, but the opening statements, closing arguments, and other proceedings Kennedy had requested. (*Kennedy, supra*, 379 F.3d at pp. 1046-1047, quoting *Britt, supra*, 404 U.S. at p. 227.) The court noted that opening statements and closing arguments "may provide valuable insight into the government's strategy" and were "crucial to the development of an effective defense. Various tactical and strategic decisions made by Kennedy's new counsel might have been affected had he been provided with a copy of the prosecutor's opening statement and closing argument; he might, for example, have been able to anticipate some of the prosecution's key arguments, identify potential weaknesses in its case, assess the relative weight that the prosecution would place on various items of evidence, and better determine what would be needed to refute them." (*Kennedy*, at pp. 1049, 1057.) The contention that such prior proceedings need not be provided was inconsistent with *Britt*'s stated purpose of ensuring that the defendant could prepare an effective defense and with the equal protection mandate that poor defendants have the same access to the same basic materials of a defense as the wealthy. (*Kennedy*, at p. 1049.)

Appellant's prior trial involved the same charges, the same witnesses, and the same prosecutor trying the case. It was a veritable road map for the second trial. In similar circumstances, the *Kennedy* court "doubt[ed] seriously that a wealthy defendant would ordinarily proceed in a subsequent trial without purchasing a full transcript of the proceedings, including, but not limited to, . . . the opening statements and closing arguments." (*Kennedy, supra*, 379 F.3d at p. 1049.) Thus, as a tool to help identify the prosecution's key arguments, identify potential weaknesses in its case, assess the relative weight the prosecution would place on items of evidence, and better determine what appellant would need to refute them, I can hardly agree with the respondent's assertion that a transcript of the opening statements and closing arguments "would have had no bearing on appellant's defense strategy." I also cannot say this sort of probable value in

4

rebutting the prosecution's case did not factor into *Hosner* declaring a presumptive right to a complete transcript of a prior mistrial.

Furthermore, though my colleagues cite favorably to the *Kennedy* dissent, I do not think the *Kennedy* dissent forecloses the result I reach here.  The *Kennedy* court's aim on the habeas corpus petition was to determine whether the state appellate court's decision reflected an objectively reasonable interpretation of clearly established United States Supreme Court precedent.  (*Kennedy, supra*, 379 F.3d at pp. 1059-1060 (dis. opn. of O'Scannlain, J.).)  The relevant precedent was *Britt*.  *Britt*, of course, held that the state must provide indigent defendants with the basic tools of an adequate defense when those tools are available for a price to other defendants, and "[w]hile the outer limits of that principle are not clear," it was at least clear that "the State must provide an indigent defendant with a transcript of prior proceedings when that transcript is needed for an effective defense or appeal."  (*Britt, supra*, 404 U.S. at p. 227.)  The *Kennedy* dissent characterized *Britt* as having "fuzzy contours."  (*Kennedy, supra*, at p. 1060 (dis. opn. of O'Scannlain, J.).)  As a result, the dissent believed the state court's decision to deny Kennedy the nontestimonial parts of the transcript represented a reasonable interpretation of *Britt*.  (*Kennedy*, at pp. 1060, 1062.)  Still, dissenting Judge O'Scannlain acknowledged:  "If this were a direct criminal appeal, I might not necessarily disagree with the court's interpretation of *Britt*."  (*Id.* at p. 1059.)

*Hosner* built on *Britt* and went even further.  Rather than *Britt*'s "fuzzy" rule that the state must provide "a transcript of prior proceedings" when it was "needed for an effective defense" (*Britt, supra*, 404 U.S. at p. 227), *Hosner* declared an indigent defendant is "presumptively entitled to a complete transcript of his first trial" when preparing for retrial (*Hosner, supra*, 15 Cal.3d at p. 66).  We presume the defendant's need for such a transcript until the prosecution demonstrates otherwise.  I believe the majority's approach of requiring appellant to initially show a need for transcripts of the opening statements and closing arguments is contrary to *Hosner*.  Indeed, I think the *Hosner* presumption of need exists precisely because it is logical to assume the transcript of a mistrial will be valuable in preparing for a retrial on the exact same charges—and

5

this value lies not only in the impeachment value of prior witness testimony, but in the strategic value to be gleaned from counsels' statements and arguments to the jury.[1]

In conclusion, the prosecution here made no showing to overcome the presumptions benefiting appellant—that is, that he needed the transcript for an effective defense and needed nothing less than a complete transcript. Absent any showing by the prosecution, the court erred in denying appellant the transcript in its entirety, which under *Hosner* requires automatic reversal. (*Hosner, supra*, 15 Cal.3d at pp. 66, 70.) Until our Supreme Court revisits the issue, I do not believe we are free to conduct a harmless error review. I would therefore reverse the judgment.

FLIER, J.

---

[1] This majority observes that I do not cite to any facts in the record to support the notion that the opening statements are closing arguments would have strategic value in helping appellant prepare for retrial. This is because, like Hosner, I presume such transcript was necessary for an effective defense until that presumption has been rebutted. Respondent's attempt to rebut the presumption now consists only of conclusory assertions like those I noted above –that the transcript "would have had no bearing on appellant's defense strategy," that it was "not of critical value," and that nothing "transpired during the opening statements and closing arguments that was necessary for an effective defense."