[No. E011679. Fourth Dist., Div. Two. June 24, 1994.]

THE PEOPLE, Plaintiff and Respondent, v.
MARQUIBE LONNELL BROOKS, Defendant and Appellant.

**[Opinion certified for partial publication.*]**

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts 2, 3, 4 and 5.

**COUNSEL**

Robison D. Harley, Jr., under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, M. Howard

Wayne and Frederick R. Millar, Jr., Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**RAMIREZ, P. J.**—A jury convicted Marquibe Lonnell Brooks of assault with a deadly weapon (Pen. Code, § 245, subd. (a)(1)), threatening to commit a crime which would result in great bodily injury (Pen. Code, § 422), and dissuading a witness (Pen. Code, § 136.1, subd. (c)(2)). As to the first two offenses, the jury further found that Brooks committed them for the benefit of a street gang. (Pen. Code, § 186.22, subd. (b).) He was sentenced to prison and appeals, claiming the trial court erroneously instructed the jury, failed to bifurcate the gang allegation and sentenced him. He also contends that his stipulation concerning the gang allegation was invalid. In supplemental briefing, he argues that the evidence was insufficient to support one of his convictions. We agree only with Brooks's contention about the gang allegation stipulation and one of his jury instruction arguments, as it relates to one of the counts. Therefore, we reverse that count and the gang allegations. This necessitates a resentencing of Brooks, which moots his sentencing arguments. We affirm his remaining convictions.

### FACTS

The victim testified that she witnessed a robbery perpetrated by members of the 12th Street Crips in September 1991. She had gone to court twice for the robbery prosecution, the second time during the last two or three days of October. She stated, variously, that "between maybe the 12th and the 15th" or "towards the middle" of November, Brooks came to her home and grabbed her by the throat and put a gun up to her head. He said, " 'Don't go to court and testify against our home boys. [¶] Or else we'll hurt you or we'll take you out. [¶] If you go to court and testify, I'll kill you. [¶] There's no where you can go that I won't be able to find you.' "

The victim testified that "a couple [of] weeks later[,] [¶] . . . a couple of days after . . . [¶] . . . Thanksgiving . . . [¶] . . . at the end of . . . [¶] . . . November . . . [,]" Brooks, in the company of a fellow 12th Street Crip, pushed her up against a car, "put [a] gun in [her] mouth and threatened to kill [her] right then and there." When asked if she felt that Brooks was going to carry out his threat, she testified, "I felt death right then and there." Brooks also said, while still holding the gun in the victim's mouth, " 'I heard that you had went downtown to testify or something. Someone . . . told me that they seen you down there.' " The victim grabbed the gun and tried

to pull it out of her mouth. Brooks said, " 'That's a stupid thing to do. Get your hands off of it.' " Brooks's companion told him, " 'Go on and do it. I think she's lying. I'd do it if I were you.' " The victim testified that she "felt [Brooks] was going to pull the trigger right then and there." Brooks said, " 'I should do it. I should do it right now[.]' " The victim said the two men told her, "If I was to go anywhere near the courthouse or anywhere downtown, I would be killed, and there's no place I could run or hide. They'd find me no matter where I went."

ISSUES AND DISCUSSION

1. *Insufficient Evidence of Threatening to Commit a Crime Which Would Result in Great Bodily Injury*

The jury convicted Brooks of violating Penal Code section 422, which punishes "Any person who willfully threatens to commit a crime which will result in death or great bodily injury to another person, with the specific intent that the statement is to be taken as a threat, even if there is no intent of actually carrying it out, *which, on its face and under the circumstances in which it is made, is so unequivocal, unconditional, immediate, and specific as to convey to the person threatened, a gravity of purpose and an immediate prospect of execution* of the threat, and thereby causes that person reasonably to be in sustained fear for his or her own safety . . . ." (Italics added.)

In supplemental briefing, Brooks contends that his conviction cannot stand because his threats to the victim were conditional, which, he argues, takes them out of the prohibition established by Penal Code section 422. In support, he cites *People* v. *Brown* (1993) 20 Cal.App.4th 1251 [25 Cal.Rptr.2d 76], which so holds. We agree with Brooks that his first and last threats to the victim were conditional—he would kill her *if* she testified against his fellow gang members. However, we cannot agree with him that a threat is not included in Penal Code section 422 merely because it is conditional.

The language of Penal Code section 422 at issue here was taken, verbatim, from *United States* v. *Kelner* (2d Cir. 1976) 534 F.2d 1020, 1027. *Kelner* dealt with a federal law prohibiting the communication of a threat in interstate commerce. The Jewish Defense League had called a news conference to comment upon the presence of the Palestine Liberation Organization leader, Yasser Arafat, at the United Nations. During the conference and in a televised interview, Kelner had stated his intention to kill Arafat and his lieutenants.

Kelner argued that his remarks were not "threats," within the meaning of the statute, but constituted "political hyperbole." (*United States* v. *Kelner*,

*supra*, 534 F.2d at p. 1024.) The court rejected this contention. Relying on the Supreme Court's opinion in *Watts* v. *United States* (1969) 394 U.S. 705 [22 L.Ed.2d 664, 89 S.Ct. 1399]), it held, ". . . [T]hreats punishable consistently with the First Amendment [are] only those which according to their language and context convey . . . a gravity of purpose and likelihood of execution so as to constitute speech beyond the pale of protected 'vehement, caustic . . . unpleasantly sharp attacks on government and public officials.' [¶] . . . [O]nly unequivocal, unconditional and specific expressions of intention immediately to inflict injury may be punished—only such threats . . . are . . . 'properly punished every day under statutes prohibiting extortion, blackmail and assault without consideration of First Amendment issues.' [¶] . . . Even where the threat is made in the midst of what may be other protected political expression, . . . the threat itself may affront such important social interests that it is punishable . . . ." (*United States* v. *Kelner*, *supra*, 534 F.2d at pp. 1026, 1027.)

*Watts* v. *United States*, *supra*, 394 U.S. 705, upon which *Kelner* relied, involved federal legislation passed during World War I and after three presidential assassinations. The law prohibited threatening to kill or harm the President. Following a public rally in Washington, D. C., Watts had joined a group of primarily college-age people to discuss police brutality. When someone in the group suggested that the young people present get more education before expressing their views, Watts pointed out that he had just been classified I-A for military service and ordered to report for a physical. He added, " 'I am not going. If they ever make me carry a rifle the first man I want to get in my sights is [President Johnson].' " (*Id.*, at p. 706.) Watts and the people present laughed. The Supreme Court agreed with Watts's position that his statement was "political hyperbole" rather than a "true 'threat' " when "[t]aken in context, and regarding the expressly conditional nature of the statement and the reaction of the listeners . . . ." (*Id.*, at p. 708.)

Earlier cases involving this law upheld violations when the threats were conditional, as they were in *Watts, supra. (Clark* v. *United States* (5th Cir. 1918) 250 F. 449; *United States* v. *Jasick* (E.D.Mich. 1918) 252 F. 931; *United States* v. *Stobo* (D.Del. 1918) 251 F. 689; *United States* v. *Stickrath* (S.D.Ohio 1917) 242 F. 151.) Later cases did the same. (*United States* v. *Crews* (10th Cir. 1986) 781 F.2d 826; *United States* v. *Welch* (10th Cir. 1984) 745 F.2d 614; *United States* v. *Howell* (5th Cir. 1983) 719 F.2d 1258; *United States* v. *Smith* (10th Cir. 1982) 670 F.2d 921.) Cases involving other laws aimed at threats in various settings echo the notion that the conditional nature of a threat does not mean it is not a true threat, and thus, punishable. (*United States* v. *Malik* (2d Cir. 1994) 16 F.3d 45, 50; *United States* v. *Cox*

(6th Cir. 1992) 957 F.2d 264, 266 [". . . [A] threat is not to be construed as conditional if it had a reasonable tendency to create apprehension that its originator will act in accordance with its tenor."]; *United States* v. *Shoulberg* (2d Cir. 1990) 895 F.2d 882, 886 [calling a conditional threat "neither abstract nor hyperbolic"]; *Martin* v. *United States* (8th Cir. 1982) 691 F.2d 1235, 1240; and *United States* v. *Lincoln* (8th Cir. 1979) 589 F.2d 379, 382 [both of which held that a conditional threat was not ambiguous].) As the court commented in *United States* v. *Schneider* (7th Cir. 1990) 910 F.2d 1569, 1570, "Most threats are conditional; they are designed to accomplish something; the threatener hopes that they *will* accomplish it, so that he won't have to carry out the threats."

In *United States* v. *Hoffman* (7th Cir. 1986) 806 F.2d 703, the defendant had drawn a picture of a gun firing a bullet, and had written the words, "Ronnie [(meaning, President Reagan)], Listen Chump! Resign or You'll Get Your Brains Blown Out." The court held, ". . . [T]he conditional nature of a statement does not make the statement any less of a 'true threat' simply because a contingency may be involved. [¶] The clear and unambiguous statement . . . together with the drawing . . . on its face constitutes a clear and unambiguous threatening statement that one 'would reasonably expect to be taken seriously[.]' " (*Id.*, at pp. 711-712.)

The court in *United States* v. *Crews, supra*, 781 F.2d 826, concluded that the statement, " 'If [President] Reagan came to Sheridan, I would shoot him[,]' [¶] . . . was a banal threat more akin to those we often see in instances of extortion than to protected political speech. [¶] . . . [It] had political overtones because of its context. But a compelling government interest in protecting the President justifies imposition of criminal liability when it is reasonably clear that the defendant was not engaged in political advocacy. . . . [¶] . . . [A] true threat means a serious threat as distinguished from words uttered as mere political argument, talk, or jest." (*Id.*, at pp. 829, 832.)

The demarcation between speech which is protected by the First Amendment and that which is punishable under statutes prohibiting threats was explained more elaborately in *Shackelford* v. *Shirley* (5th Cir. 1991) 948 F.2d 935. The case concerned a Mississippi statute which prohibited making a threat to injure or harm during a phone call.

The *Shackelford* court held, ". . . [T]he first amendment . . . [contains a] general guarantee of governmental noninvolvement in speech implicating a broadly conceived notion of political and social discourse. [¶] As speech strays further from the values of persuasion, dialogue and free exchange of

ideas the first amendment was designed to protect, and moves toward threats made with specific intent to perform illegal acts, the state has greater latitude to enact statutes that effectively neutralize verbal expression. [Citations.] Professor Tribe describes the 'public dialogue' values underlying the first amendment as follows: [¶] ['.  . . [E]xpression has special value only in the context of 'dialogue': communication in which the participants seek to persuade, or are persuaded; communication which is about changing or maintaining beliefs, or taking or refusing to take action on the basis of one's beliefs . . . [.] It is not plausible to uphold the right to use words as projectiles where no exchange of views is involved.['] [¶] . . . [A]s expansive as the first amendment's conception of social and political discourse may be, threats made with specific intent to injure and focused on a particular individual easily fall into that category of speech deserving of no first amendment protection." (*Shackelford* v. *Shirley, supra,* 948 F.2d at pp. 937, 938.)

*United States* v. *Velasquez* (7th Cir. 1985) 772 F.2d 1348 had earlier stated the foregoing more succinctly, in the context of a statute prohibiting threatening a government informant, thusly: "A threat to break a person's knees . . . for his having given information to the government is a statement of intention rather than an idea or opinion and is not part of the marketplace of ideas. [¶] The statute's limited scope takes it out of the realm of social or political conflict where threats to engage in behavior that may be unlawful may nevertheless be part of the marketplace of ideas, broadly conceived to embrace the rough competition that is so much a staple of political discourse." (*Id.,* at p. 1357.)

"When determining whether an alleged threat falls outside the realm of protected speech, it is important to focus on the context of the expression." (*United States* v. *Bellrichard* (8th Cir. 1993) 994 F.2d 1318, 1321.) *Bellrichard,* and other cases, make clear that the context is important for an additional reason. Because the gravamen of any offense prohibiting threatening words is the effect the statement has on the victim, the latter's reasonable perception of what is intended by the statement, even if conditional, becomes crucial. (*Id.,* at p. 1324; *United States* v. *Malik, supra,* 16 F.3d at p. 50; *United States* v. *Cox, supra,* 957 F.2d at p. 266; *United States* v. *Schneider, supra,* 910 F.2d at pp. 1570, 1571; *United States* v. *Velasquez, supra,* 772 F.2d at pp. 1357, 1358; *Martin* v. *United States, supra,* 691 F.2d at p. 1240.)

From this line of cases, we discern two principles relevant to Penal Code section 422, whose disputed language was "carefully drafted to comport with the detailed guidelines articulated by" one of those cases. (*People* v. *Fisher*

(1993) 12 Cal.App.4th 1556, 1560 [15 Cal.Rptr.2d 889].) Conditional threats are true threats if their context reasonably conveys to the victim that they are intended, and the First Amendment is not implicated by such threats since they do not concern political or social discourse or the so-called marketplace of ideas.

Penal Code section 422 was passed by the Legislature as part of the "California Street Terrorism Enforcement and Prevention Act" of 1988. A portion of that act provides: "The Legislature hereby finds and declares that it is the right of every person . . . to be *secure and protected from fear, intimidation*, and physical harm caused by the activities of violent groups and individuals. It is not the intent of this chapter to interfere with the exercise of the constitutionally protected rights of freedom of expression and association. [¶] The Legislature, however, . . . finds that the State of California is in a state of crisis which has been caused by violent street gangs whose members *threaten, terrorize*, and commit a multitude of crimes against the peaceful citizens of their neighborhoods. These activities . . . present a clear and present danger to public order and safety and are not constitutionally protected." (Pen. Code, § 186.21, italics added.)

We agree with the People that to accept the position of Brooks and the opinion in *Brown*, that any threat containing a condition is not punishable under Penal Code section 422, would undermine the intent of the Legislature, as stated in Penal Code section 186.21, and ignore the development of federal law which relies on *Kelner.*

Moreover, such an approach ignores the language of the statute itself. The statute provides that the threat must be, inter alia, "*so* unconditional . . . as to convey to the [victim] a gravity of purpose and an immediate prospect of execution[.]" (Italics added.) If the fact that a threat is conditioned on something occurring renders it not a true threat, there would have been no need to include in the statement the word "so." Under Brooks's approach, every threat that is conditional would go unpunished, no matter how much fear is reasonably felt by the victim. This would lead the way to such an absurdity as excluding from the statute's prohibition the threat, "If the sun rises tomorrow, I will kill you." Such a result clearly undermines the purpose of the statute. We believe Penal Code section 422 was aimed *precisely* at the kind of behavior in which Brooks engaged here. If not this, then what?

Finally, assuming that we accept Brooks's position, he ignores the fact that after the first and before the last threats, he additionally threatened the victim in a completely unconditional manner. At the beginning of the second incident, Brooks put a gun in the victim's mouth, and threatened to kill her

"right then and there." She testified that she "felt death right then and there." *As he continued to hold the gun in her mouth,* he told her that he had heard that she had done the thing which he had told her during their previous meeting would result in her death, i.e., going downtown to testify against his fellow gang members. When she tried to pull the gun out of her mouth, he told her that was a stupid thing to do and he ordered her to get her hands off the gun. She did not testify whether the gun was returned to her mouth; however, Brooks's companion urged Brooks to shoot the victim. The victim stated she believed that Brooks was going to pull the trigger "right then and there." Brooks said, "I should do it. I should do it right now." This testimony establishes that Brooks *unconditionally* threatened the victim. Substantial evidence supports the conviction.

2.-5.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## DISPOSITION

Brooks's conviction of assault with a deadly weapon (count II) is reversed, as is the gang finding (Pen. Code, § 186.22, subd. (b)) as to that count, as well as to count III. Brooks's convictions for threatening to commit a crime resulting in great bodily injury (count III) and dissuading a witness (count IV) are affirmed. After decision by the prosecutor concerning retrial is made, Brooks must be resentenced.

McKinster, J., and McDaniel, J.,† concurred.

Appellant's petition for review by the Supreme Court was denied September 29, 1994. George, J., was of the opinion that the petition should be granted.

---

*See footnote, *ante,* page 142.

†Retired Associate Justice of the Court of Appeal, Fourth District, senior judge status (Gov. Code, § 75028.1), sitting under assignment by the Chairperson of the Judicial Council.