Filed 12/14/20  P. v. Aguirre CA2/6

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>　Plaintiff and Respondent,<br><br>v.<br><br>GILBERT ROMERO AGUIRRE,<br><br>　Defendant and Appellant. | 2d Crim. No. B296528<br>(Super. Ct. No. KA119165)<br>(Los Angeles County) |

Gilbert Romero Aguirre appeals a judgment following his conviction, after a jury trial, of intimidating a witness (Rafael Batres) (Pen. Code,[1] § 136.1, subd. (b)(1)), a felony (count 1); intimidating a witness (Stephanie Batres) (§ 136.1, subd. (b)(1)), a felony (count 4), with findings that he threatened to use force or violence (§ 136.1, subd. (c)(1)); and vandalism (§ 594, subd. (a)), a misdemeanor (count 3).  Aguirre admitted that he suffered five prior serious felony strike convictions under the "Three Strikes"

---

[1] All statutory references are to the Penal Code.

law.  (§ 667, subds. (a), (b)-(i), 1170.12, subd. (a)-(d).)  The trial court sentenced him to an aggregate prison sentence of 70 years to life.

We conclude, among other things, that 1) substantial evidence supports the judgment; 2) Aguirre was not engaged in constitutionally protected speech; 3) the trial court did not abuse its discretion during sentencing by not striking Aguirre's prior serious felony strike convictions; but 4) the court erred by ruling it had no discretion to impose a concurrent sentence on count 4. We remand for resentencing.  In all other respects, we affirm.

## FACTS

On September 23, 2018, Alejandra Martinez was in the front yard of her brother-in-law Rafael Batres's house when she heard a loud noise.  She saw Aguirre drive his truck into Batres's truck.  Aguirre got out of the truck and then broke the window of Batres's truck.  She testified Aguirre was angry and yelling.  She said Aguirre was "just telling [them] to call" Batres to come out.

Batres came to the "front doorway" area of the house. Batres's daughter Stephanie Batres (Stephanie) called the police.

Aguirre looked in the direction of Batres and Stephanie and said, "If you call the cops, you're done."  Martinez testified she was "scared," Aguirre was "serious," and she believed he was "capable of carrying out these threats."

Stephanie testified that she was on the phone with the police while Aguirre was "smashing" the windows of her father's truck.  She was "scared" and did not want Aguirre "to get near" her father or herself.  Martinez told her about Aguirre's threat. Stephanie testified she was afraid "because [she] was the one that called [the police]."  She heard Aguirre "calling out" her father and Aguirre was "yelling."  Aguirre left while she was on

the phone with police.  He then returned.  She feared for the safety of her father because of Aguirre's threat.

Rafael Batres testified he was "very scared" because of Aguirre's actions.  Aguirre called him a "motherfucker" and a "fuckin' asshole."  Aguirre "kept on repeating" the threat, "If you call the police, you'll be done."  Batres had previously employed Aguirre to perform work on construction jobs.  On one prior occasion, Aguirre had told Batres that he was a gang member belonging to the "Townsmen" gang.  Batres testified the words "you were done" in the threat meant "[Aguirre] was going to come over and kill [him]."  Aguirre "was very angry."  Batres believed the threats and felt Aguirre "was capable of carrying out those threats."  He was concerned for his life and for his children and his family.

In the defense case, Aguirre testified he had been drinking.  He was not angry at Rafael Batres.  He drove his truck and accidentally hit Batres's truck two or more times.  He hit the window of that truck with a bottle and a hammer.  He hit the truck.  He said, "It was out of being drunk.  Mad.  I was mad and drunk."

Aguirre did not tell anyone, "Call the police.  When I get out, you're done."  He worked for Batres who did not pay him "fair wages."  Aguirre testified that he "drove away to leave the scene," but he realized that he had "made a mistake."  He came back to take "responsibility [for] . . . what [he] did wrong" and he waited for the sheriff department to arrive.

Sheriff's Deputy Sandy Ehrhorn testified she arrested Aguirre.  She said he was sober.  He showed no signs of being under the influence of alcohol or drugs.  There was no alcohol on his breath.

3

DISCUSSION

*Dissuading a Witness from Reporting a Crime to Police*

Aguirre contends the evidence is insufficient to support his conviction for intimidating or dissuading a witness. He claims the statement he made was protected by the First Amendment. We disagree.

In reviewing the sufficiency of the evidence, we draw all reasonable inferences from the record in support of the judgment. We do not decide the credibility of the witnesses. (*People v. Ochoa* (1993) 6 Cal.4th 1199, 1206.)

To prove a violation of section 136.1, subdivision (b)(1), the People must prove the defendant attempted to prevent or dissuade a person who is a victim or witness to a crime from making a report to any peace officer or other designated officials. (*People v. Navarro* (2013) 212 Cal.App.4th 1336, 1347.) The People must show the defendant intended to affect or influence a potential witness's or victim's testimony or acts. (*Ibid.*)

In a case where the defendant's conduct involves speech and he or she had made a plausible First Amendment defense, the court makes an independent review of the record. (*In re George T.* (2004) 33 Cal.4th 620, 632.) Such constitutionally protected speech may include, among other things, songs, fiction, artistic expression, poems, "political or social discourse or the so-called marketplace of ideas." (*People v. Brooks* (1994) 26 Cal.App.4th 142, 149.) It may include crude, offensive, abusive, vituperative "political hyperbole." (*Watts v. United States* (1969) 394 U.S. 705, 708.) Or statements that are made as an "expression of jest." (*People v. Lowery* (2011) 52 Cal.4th 419, 427.) But it does not include threats. " 'What is a threat must be

4

distinguished from what is constitutionally protected speech.' " (*George T.*, at p. 634.)

Aguirre claims his statement was merely an expression motivated by "the fact that Batres had been financially exploiting him for years" as his boss. The People respond the statement "call the cops and you're done" is not constitutionally protected speech. It was not a labor relations claim, a political or artistic statement, or, as in *In re George T.*, a poem. It did not fall within "social discourse or the so-called marketplace of ideas." (*People v. Brooks*, *supra*, 26 Cal.App.4th at p. 149.) A defendant may be convicted consistent with the First Amendment where he or she makes "threatening statements that a reasonable listener would understand, in light of the context and surrounding circumstances, to constitute a true threat . . . ." (*People v. Lowery*, *supra*, 52 Cal.4th at p. 427.) Here, the language and surrounding circumstances show this was a threat to dissuade witnesses and victims from making a report about his criminal activity to the police. It is properly prohibited under a state's Penal Code as it does not have First Amendment protection. (*In re George T.*, *supra*, 33 Cal.4th at p. 634; *People v. Navarro*, *supra*, 212 Cal.App.4th at p. 1350 [section 136.1, subdivision (b) does not unconstitutionally "target speech"; it only prohibits unlawful conduct].)

Aguirre contends that 1) his words did not "rise to the level of an unequivocal, unconditional and immediate threat," and 2) there was no evidence to support a finding that he specifically intended his words to achieve some future consequence such as a threat to use violence. We disagree.

The words "[i]f you call the cops, you're done," and Aguirre's conduct, constituted a complete unambiguous threat comprising

all the elements of the offense.  (§ 136.1, subd. (b)(1); *People v. Pettie* (2017) 16 Cal.App.5th 23, 54-55.)  "Proof of an attempt to prevent any future report to the police was sufficient to satisfy the statute."  (*Ibid.*)  "There is, of course, no talismanic requirement that a defendant must say 'Don't testify' [or 'Don't call the cops'] or words tantamount thereto, in order to commit the charged offenses."  (*People v. Thomas* (1978) 83 Cal.App.3d 511, 514.)  Even where the defendant's words are ambiguous, if they "reasonably may be interpreted as intending to achieve the future consequence of dissuading the witness," the "offense has been committed."  (*Pettie*, at p. 55.)  The statute includes "any conduct geared toward impeding a person from reporting a crime."  (*People v. Navarro, supra*, 212 Cal.App.4th at p. 1350.)  Where the offense "is accompanied by . . . an express or *implied threat* of force or violence," it is a felony.  (§ 136.1, subd. (c)(1), italics added.)  Evidence the jury may consider in support of its findings may be "inferred from [the defendant's] actions and words."  (*People v. Young* (2005) 34 Cal.4th 1149, 1212; see also *People v. Cruz* (2008) 44 Cal.4th 636, 684 [jury may consider "facts surrounding" the incident to find an implied threat of violence].)

Here the jury could reasonably find Aguirre attempted to dissuade the Batreses, the witnesses, and victims of his vandalism and violent behavior from communicating with police.  The words "you're done," coupled with Aguirre's violent conduct, and the People's evidence, reasonably conveyed the meaning that this was an implied threat to use force or violence if they discussed his criminal conduct with the police.  Rafael Batres and Stephanie testified they were frightened by this threatening statement.  Batres testified he believed Aguirre's threat meant

6

"he was going to come over and kill [him]." He testified he was afraid for his children and his family. Batres "suffered from nightmares following this incident for days." " '[I]t is important to focus on the context of the expression.' " (*People v. Brooks*, *supra*, 26 Cal.App.4th at p. 148.) Aguirre's words had been accompanied by yelling, vandalism, and violent behavior. (*In re Ernesto H.* (2004) 125 Cal.App.4th 298, 313.) Batres testified Aguirre was "very angry" and he believed Aguirre was "capable of carrying out" his threat. Aguirre called him a "motherfucker" and a "fuckin' asshole," and he "kept on repeating" the threat. (*People v. Thomas*, *supra,* 83 Cal.App.3d at p. 514 [threatening words "uttered in a loud, clear, and angry manner" may be considered in deciding an attempt to dissuade].) Batres also knew Aguirre had been a gang member. The jury could reasonably infer this was an attempt specifically intended to prevent contact with the police backed up by an implied threat of violence.

Aguirre claims the jury should have found his statement was simply a harmless "emotional outburst" showing his "frustration" with his former employer. But Martinez testified Aguirre's threats were "serious." Aguirre testified that he did not make the statement at issue here and he was not angry. But the jury did not find his testimony to be credible. Jurors rejected his claim about not making the statement. Aguirre testified he had been drinking and was intoxicated. He claims his statements were the product of "an 'unusual' drunken tantrum." But the jury could reasonably reject that claim. Sheriff's Deputy Ehrhorn testified Aguirre was "sober" and there were no signs that he had been drinking or was under the influence of drugs. The testimony of the People's witnesses, the repeated manner in

7

which the threat was conveyed, and the violence that had accompanied the threat were compelling evidence showing this was not merely a single harmless emotional outburst. His action showed deliberation. He told Martinez to have Batres come out; he repeated the threat multiple times; his words were directed at Batres and his daughter, "uttered in a loud, clear, and angry manner" (*People v. Thomas*, *supra*, 83 Cal.App.3d at p. 514); and the threat was made for the goal of protecting himself from arrest. Aguirre notes that he testified that he left the scene, but came back to take responsibility for his actions, and he waited for the sheriff deputies to arrive. He claims this undermines the jury's verdict and shows he lacked criminal intent. But the issue is not whether some evidence supports appellant, it is whether substantial evidence supports the judgment. The credibility of his testimony about his good intentions was a matter for the jury to decide. (*People v. Ochoa*, *supra*, 6 Cal.4th at p. 1206.) The verdict shows they did not find him to be credible.

Aguirre contends he could not have intended to dissuade or actually dissuaded the Batreses from reporting a crime because Stephanie had already been on the phone to make a 911 call when he made his statement. The People respond that the jury could find he did not know she called 911, to whom she was talking, or the content of that conversation. Aguirre did not testify that he saw her make a 911 call. He said Batres family members were speaking Spanish and he could not understand "what they were saying." Stephanie testified Aguirre drove away while she was on the phone with police. The threat was also directed at Batres who had not called the police.

Moreover, even had Aguirre known what Stephanie was saying on the phone, the jury could find his threat was an

8

attempt to dissuade her from continuing to report facts to police on the 911 call, from making a future report to police, or from providing information to law enforcement during the investigation to determine whether to arrest Aguirre. (*People v. Young, supra*, 34 Cal.4th at p. 1211; *People v. Pettie, supra*, 16 Cal.App.5th at pp. 54-55; *People v. Fernandez* (2003) 106 Cal.App.4th 943, 950; *People v. Thomas, supra*, 83 Cal.App.3d 511, 513, fn. 3.) Aguirre's statement was also a threat to Batres who did not make the 911 call. The People were not required to prove Aguirre's statement successfully prevented a call to police, or to prove "the existence of an ongoing proceeding, nor that [defendant] successfully prevented any such efforts." (*Pettie*, at p. 54.) This crime involves the attempt to dissuade. (*Ibid.*) The evidence was sufficient.

*Sentencing - Consecutive Sentences*

Aguirre fell within the purview of the Three Strikes law with five prior strike convictions. The trial court imposed an aggregate 70-years-to-life sentence. This included a 25-years-to-life sentence on the count 1 intimidating a witness conviction, plus two consecutive five-year prior serious felony conviction enhancements (§ 667, subd. (a)), plus a consecutive 25-years-to-life sentence on the count 4 conviction with two consecutive five-year prior serious felony conviction enhancements (§ 667, subd. (a)). For the misdemeanor, the court imposed a concurrent 364-day sentence.

Aguirre contends the trial court erred by imposing consecutive sentences for his convictions on counts 1 and 4 for intimidating a witness. He claims the court erroneously believed it lacked discretion to impose a concurrent sentence for the count

9

4 offense and the case must be remanded for resentencing. We agree.

As to counts 1 and 4, the trial judge said that the counts are to be run consecutive because "[he does] not have the discretion" to run them concurrently. He also said, "I do want to indicate for the benefit of the reviewing court that it is my assessment as the trial judge that *should I have the discretion*, the counts . . . *should be run concurrent, not consecutive*." (Italics added.)

In *People v. Hendrix* (1997) 16 Cal.4th 508, 513, our Supreme Court held that under the Three Strikes law "consecutive sentences are not mandated . . . if all of the serious or violent current felony convictions are 'committed on the same occasion' or 'aris[e] from the same set of operative facts.' " In such a case, the trial court has "discretion to sentence defendant either concurrently or consecutively." (*Id.* at p. 514.) Here counts 1 and 4 were committed on the same occasion. The trial court had discretion to impose these sentences concurrently. (*Ibid.*)

The People contend *Hendrix* is not current law because of the passage of Proposition 36. They claim "the current Three Strikes law, as amended by Proposition 36 . . . mandates consecutive sentences," therefore the trial court was correct. We disagree.

Appellate courts have rejected the People's contention. They have ruled that the statutes enacted following the passage of Proposition 36 did not change the *Hendrix* rule. (*People v. Torres* (2018) 23 Cal.App.5th 185, 198, 201-202; see also *People v. Marcus* (2020) 45 Cal.App.5th 201, 212-213; *People v. Gangl* (2019) 42 Cal.App.5th 58, 60; *People v. Buchanan* (2019) 39 Cal.App.4th 385, 392.) Consequently, *Hendrix* remains current

law, which means the trial court was not required to impose consecutive sentences, and it had discretion to run count 4 concurrently to count 1. Consequently, this case must be remanded for resentencing because the trial court did not know its sentencing discretion. (*In re Large* (2007) 41 Cal.4th 538, 550.) Had it known that it had discretion to impose concurrent sentences, it indicated it would have run count 4 concurrently to count 1.

*Not Striking Priors During Sentencing*

Aguirre contends the trial court "abused its discretion in refusing to strike" his prior serious felony "strike" "convictions." The People respond that the court acted within its discretion in declining to strike the prior serious felony conviction enhancements.

"[A] trial court may strike or vacate an allegation or finding under the Three Strikes law that a defendant has previously been convicted of a serious and/or violent felony" in furtherance of justice. (*People v. Carmony* (2004) 33 Cal.4th 367, 373.) The court determines whether the defendant falls outside the spirit of the Three Strikes law. A ruling on whether or not to strike the priors is reviewed for an abuse of discretion. (*Ibid*.)

Aguirre filed a motion to dismiss strike priors relying on *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497. He noted that he had four "strike priors" (§ 245, subd. (a)(1)) in 1986, and a "strike prior" in 1993 (§ 273.5, subd. (a)). He emphasized that he was 56 years old, the prior convictions were 25 and 32 years old, and that his last felony occurred in 1993.

The People opposed the motion claiming Aguirre "has led a continuous life of crime for the past 33 years." He had 12 total convictions, which included four "serious strike felonies" and one

"violent strike felony." They said Aguirre "has consistently been convicted of a misdemeanor or felony crime with no more than 1 or 2 years in between being released from custody and being arrested for the next crime."

In denying the request to strike priors, the trial court noted that in 1988 Aguirre was released on parole. But he "returned to custody multiple times for violation of parole." It said, "[W]hen I count the two current crimes, the defendant has a total of seven strike priors." It said that Aguirre had led "a life of violence." He constituted "a serious danger to society. . . . He is within the spirit of the Three Strikes law."

Aguirre contends there are significant facts that should be considered in mitigation. These include that Aguirre "left his gang life behind, and became a family man." Leaving gang life may be a significant mitigating factor involving the defendant's background that a trial court may consider. (*People v. Carmony*, *supra*, 33 Cal.4th at p. 374; *Dix v. Superior Court* (1991) 53 Cal.3d 442, 460; *People v. McGlothin* (1998) 67 Cal.App.4th 468, 473-474.) Aguirre's trial counsel did not present evidence on this issue, or even mention it, at the sentencing hearing. But because this case must be remanded for resentencing, Aguirre should have an opportunity to present such evidence at the resentencing hearing in his attempt to convince the court to strike priors. (*Carmony*, at p. 374; *People v. Acosta* (2018) 29 Cal.App.5th 19, 26 [" 'on remand for resentencing "a full resentencing as to all counts is appropriate, so the trial court can exercise its sentencing discretion in light of the changed circumstances" ' "].) "[O]n remand the trial court will have ' "jurisdiction to modify every aspect of [appellant's] sentence" ' " (*Acosta*, at p. 26), and receive new evidence on sentencing factors at the resentencing

hearing.  (*Dix,* at p. 460; *People v. Webb* (1987) 186 Cal.App.3d 401, 409; *People v. Foley* (1985) 170 Cal.App.3d 1039, 1047; *Van Velzer v. Superior Court* (1984) 152 Cal.App.3d 742, 744.)

But based on the evidence in the *current record,* Aguirre has not shown the trial court abused its discretion by not striking priors.

DISPOSITION

The case is remanded to the trial court for resentencing.  In all other respects, the judgment is affirmed.

NOT TO BE PUBLISHED.


GILBERT, P. J.

We concur:



PERREN, J.



TANGEMAN, J.


13

David C. Broughham, Judge

Superior Court County of Los Angeles

_____

Maura F. Thorpe, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Zee Rodriguez, Noah P. Hill and Nicholas J. Webster, Deputy Attorneys General, for Plaintiff and Respondent.