Filed 9/30/24  P. v. Tran CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, Plaintiff and Respondent, v. TYLER SHAUN TRAN, Defendant and Appellant. | D083013 (Super. Ct. No. SCD297564) |

APPEAL from a judgment of the Superior Court of San Diego County, David L. Berry, Judge.  Affirmed.

James R. Bostwick, Jr., under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters and Charles C. Ragland, Assistant Attorneys General, Eric A. Swenson, Christine Y. Friedman and Monique Myers, Deputy Attorneys General for Plaintiff and Respondent.

A jury convicted Tyler Shaun Tran of making a criminal threat (Pen. Code,[1] § 422; count 1), and vandalism causing damage of $400 or more

---

[1]     Undesignated statutory references are to the Penal Code.

(§ 594, subds. (a), (b)(1); count 2).[2] The court sentenced him to four years in prison: two years eight months on count 1 plus one year four months on count 2.

Tran contends insufficient evidence supports his criminal threat conviction and the court erroneously failed to instruct the jury on the lesser included offense of attempting to make a criminal threat. We affirm.

FACTUAL AND PROCEDURAL BACKGROUND

C.W. testified that she lived on a houseboat in San Diego County. She had a longtime friendship with Tran's girlfriend, K.M., but they had lost contact. Approximately two years before the incidents that formed the basis of the charges here, C.W. renewed her friendship with K.M., who also lived on a houseboat. They met and had a conversation. C.W. testified that later that day, she met Tran for the first time when he went to C.W.'s boat "after [K.M.] left and [Tran] was yelling . . . at my boat and thought that [K.M.] was on my boat and was screaming at the top of his lungs that we were doing heroin and things like that."

During the next two years, C.W. witnessed Tran yelling demeaning and obscene comments at K.M., causing K.M. to feel so embarrassed that she would end up leaving with Tran in order to make him stop yelling. C.W. twice saw Tran push K.M. "hard enough that it made her stumble."

In late November 2022, Tran sent C.W. a text message: "You just let [K.M.] know she wants to play fucking games with me, dude she would leave me holding the bag over and over. It's take care of everything while she is

---

[2] The jury failed to reach a verdict on a resisting an executive officer charge (§ 69; count 3) and the court declared a mistrial on that count. Tran subsequently pleaded guilty to misdemeanor resisting arrest (§ 148), a lesser included offense of count 3.

out doing whatever the fuck she feels like. [*Sic.*] You let her know next time I see her, I kill her. And if she's on your boat, I'm going to fucking kill you too. I don't care anymore." C.W. testified that when she received Tran's text message she felt "threatened" and "scared" because she believed Tran meant what he wrote and would carry out the threat.

C.W. replied to Tran: "[It]'s not fair that you would say that to me because [K.M.] didn't even stay on my boat last night. She stayed on the beach." Tran responded, "I'm sorry. I have just been under a lot of stress. I just don't care anymore."

C.W.'s fears were not assuaged by Tran's apology because she considered him to be "erratic." She explained: " 'I'm sorry,' doesn't mean much coming from somebody that goes back and does the same thing over and over every day."

Despite the fact Tran's text message scared her, C.W. continued to allow K.M. to stay on her houseboat because she "was under the impression that [K.M.] wanted to break up with [ ] Tran. And I am her friend, and I wanted to help her any way I could . . . to do that." C.W. did not initially report the text message to police because she thought she could defuse the situation. Further, she did not want to get Tran in trouble.

Late one night near the end of December 2022, K.M. was on C.W.'s boat, which was anchored approximately two miles from shore. Tran then arrived in his dinghy, which he rammed into the side of C.W.'s boat, as he yelled, " 'An eye for an eye.' " He threatened to cut her anchor, and attempted to board C.W.'s boat. C.W.'s friend, M.G., was passing by in his boat and heard the commotion. He saw that K.M. and C.W. were terrified. Tran was pounding on C.W.'s boat and ramming it with his dingy. M.G. boarded C.W.'s boat. C.W. had shown Tran's threatening message to M.G.,

3

and that "definitely" influenced M.G.'s decision to call 911.  Police responded and ordered Tran to leave.  C.W. was afraid of Tran, realizing that he could always return in his dinghy after the police left.

In fact, Tran returned that night and stabbed M.G.'s dinghy, which was next to C.W.'s boat.  Tran then quickly drove his boat away.  M.G. called police, who arrived.  For the first time, C.W. told police about Tran's threatening text message.

At trial, the prosecutor asked C.W., "[S]ince you received that text message from [Tran], has there been a point at which you have stopped being fearful of him?"  C.W. answered, "No."

## DISCUSSION

### I. *Sufficiency of the Evidence of a Criminal Threat*

#### A. *Applicable Law*

"In the context of a criminal case, the substantial evidence standard stems from the requirement that a criminal conviction necessitates 'proof beyond a reasonable doubt of every fact necessary to constitute the crime . . . .' " (*People v. Mumin* (2023) 15 Cal.5th 176, 198.)  Under this standard, and reviewing the whole record, "an appellate court retrospectively inquires whether a rational trier of fact *could have* found the defendant guilty beyond a reasonable doubt, based on all the evidence when viewed in the light most favorable to the prosecution.  'Sufficiency review essentially addresses whether "the government's case was so lacking that it should not have even been submitted to the jury." ' " (*Id.* at p. 199.)  " 'Conflicts and even testimony which is subject to justifiable suspicion do not justify the reversal of a judgment, for it is the exclusive province of the [fact-finder] to determine the credibility of a witness and the truth or falsity of the facts upon which a determination depends.' [Citation.]  Ultimately, it is within the

4

[fact-finder's] exclusive province to determine whether an inference that may be drawn from the evidence is, in fact, the only reasonable one, a determination that depends on its resolution of conflicting evidence and weighing the credibility of witnesses. . . . '[F]ounded upon the evidence, the [fact-finder] not only is authorized to make any logical and reasonable deduction, but [it] is the exclusive judge of the weight and value of the inference that may be drawn by it . . . .' " (*Id.* at p. 202.) " 'A reversal for insufficient evidence "is unwarranted unless it appears 'that upon no hypothesis whatever is there sufficient substantial evidence to support' " the jury's verdict.' " (*People v. Penunuri* (2018) 5 Cal.5th 126, 142.)

Section 422 provides that the prosecution must prove " '(1) the defendant willfully threatened death or great bodily injury to another person; (2) the threat was made with the specific intent that it be *taken as a threat*, regardless of the defendant's intent to carry it out; (3) the threat was "on its face and under the circumstances in which it [was] made, . . . so unequivocal, unconditional, immediate, and specific as to convey to the person threatened, a gravity of purpose and an immediate prospect of execution"; (4) the threat *caused the person threatened* "to be in sustained fear for his or her own safety or for his or her immediate family's safety"; and (5) this fear was reasonable under the circumstances.' " (*People v. Holmes, McClain and Newborn* (2022) 12 Cal.5th 719, 809; see also *In re George T.* (2004) 33 Cal.4th 620, 630; *People v. Toledo* (2001) 26 Cal.4th 221, 227-228; *People v. Gaines* (2023) 93 Cal.App.5th 91, 136.)

"With respect to the requirement that a threat be 'so unequivocal, unconditional, immediate, and specific as to convey to the person threatened a gravity of purpose and an immediate prospect of execution of the threat,'

5

. . . the word 'so' in section 422 [means] that ' "unequivocality, unconditionality, immediacy and specificity are not absolutely mandated, but must be sufficiently present in the threat and surrounding circumstances . . . ." ' [Citations.] 'The four qualities are simply the factors to be considered in determining whether a threat, considered together with its surrounding circumstances, conveys those impressions to the victim.' " (*In re George T. supra,* 33 Cal.4th at p. 635; see *People v. Bolin* (1998) 18 Cal.4th 297, 340; *In re A.G.* (2020) 58 Cal.App.5th 647, 654.) The word "immediate" has been interpreted to mean "that degree of seriousness and imminence which is understood by the victim to be attached to the *future prospect* of the threat being carried out, should the conditions not be met." (*People v. Melhado* (1998) 60 Cal.App.4th 1529, 1538.)

B. *Contentions*

Tran contends the evidence does not support section 422's requirement that his text message be " 'on its face and under the circumstances in which it [was] made, so unequivocal, unconditional, immediate and specific as to convey to the person threatened a gravity of purpose and an immediate prospect of execution of the threat.' " He adds, "The threatening message, although sent to [C.W.], was primarily directed to [K.M.] and only secondarily and conditionally to [C.W.]." He also argues, "[K.M.'s] presence on [C.W.'s] boat was the condition that would trigger [him] to carry out the threat against both [women]. . . . All of the surrounding circumstances indicate that [C.W.] believed that there was no immediate prospect that [he] would carry out the threat. It was precisely for that reason that she waited so long to report the threat to the police. After a month of waiting, any idea that the threat was so 'unequivocal, unconditional, immediate, and specific,' etc. lost

6

all meaning. The supposed urgency of the threat could not be retroactively revived."

C. *Analysis*

Tran's words were unequivocal and specific—he told C.W. that if he saw K.M. on C.W.'s boat, he was going to "kill [C.W.] too." The jury could reasonably infer from the circumstances that Tran's statements indicated an immediate prospect of execution. He sufficiently conveyed to C.W. " 'a gravity of purpose' " in his threat when he immediately backed up the threat by warning that he did not care anymore, implying he was prepared to act recklessly. (See *Bolin, supra,* 18 Cal.4th at p. 338 ["hold[ing] that prosecution under section 422 does *not* require an unconditional threat of death or great bodily injury," (italics added)]; *People v. Brooks* (1994) 26 Cal.App.4th 142, 144, 149 ["[c]onditional threats are true threats if their context reasonably conveys to the victim that they are intended"; " ' "If you go to court and testify, I'll kill you," ' " constituted an unlawful criminal threat].)

" '[Section 422] does not concentrate on the precise words of the threat. Instead, the statute focuses on the effect of the threat on the victim, to wit, communication of a gravity of purpose and immediate prospect of execution of the threat. These impressions are as surely conveyed to a victim when the threatened harm is conditioned on an occurrence guaranteed to happen as when the threat is absolutely unconditional.' " (*People v. Wilson* (2010) 186 Cal.App.4th 789, 807.) Furthermore, the specific intent required by section 422 is not an intent to actually carry out the threatened crime, but an intent that the victim receive and understand the threat. " 'A threat is not insufficient simply because it does "not communicate a time or precise manner of execution [since] section 422 does not require those details to be expressed." ' " (*Wilson*, at p. 807.) When the words of a threat are equivocal,

7

ambiguous, or conditional, the intent that the words be taken as a threat must be determined from all the surrounding circumstances and not just on the words alone. (*People v. Butler* (2000) 85 Cal.App.4th 745, 753-755.)

Viewing the surrounding circumstances here, the record shows that from the outset, Tran knew that C.W. and K.M. were good friends. He was upset by their spending time together. The jury could reasonable infer based on evidence of their friendship that he would continue to see C.W. and K.M. together on C.W.'s boat, which was the condition for his threat. Even a conditional threat is actionable if it is based on a contingency "highly likely to occur." (*People v. Wilson, supra,* 186 Cal.App.4th at p. 806; accord, *People v. Stanfield* (1995) 32 Cal.App.4th 1152, 1158.) Tran's threat was further made actionable by his adding that he did not care anymore. The reasonable implication of that is he was aware of the grave consequences of his threatened action to both women and to himself as a result of killing them, he had weighed those consequences, and the consequences did not matter to him.

Tran further argues: "The evidence also falls short of what is required because it fails to show that the threat caused [C.W.] 'reasonably to be in sustained fear' for her own safety."

The People must prove not only that the defendant had the subjective intent to threaten, but also that the threat was objectively threatening, i.e., "that the intended threat under the circumstances was sufficient to cause a reasonable person to be in sustained fear." (*People v. Chandler* (2014) 60 Cal.4th 508, 511, 518, 525.) Sustained fear is a fear over a period of time " 'that extends beyond what is momentary, fleeting, or transitory.' " (*In re Ricky T.* (2001) 87 Cal.App.4th 1132, 1140.) No specific amount of time is required to render a victim's fear "sustained." (*People v. Allen* (1995) 33

8

Cal.App.4th 1149, 1156, fn. 5.) Case law has characterized a victim's fear as sufficiently sustained within the meaning of section 422 when the fear lasts anywhere between one and 15 minutes. (See *Allen*, at p. 1156 [Fifteen minutes sufficient to qualify as sustained fear].) The jury must consider the communication and the surrounding circumstances together, including a prior relationship between the defendant and the victim. (*People v. Wilson, supra*, 186 Cal.App.4th at p. 814.)

Tran contends that C.W. "believed that there was no immediate prospect that [he] would carry out the threat. It was precisely for that reason that she waited so long to report the threat to the police." However, C.W. explained at trial that she declined to report it initially because she hoped to defuse the situation. She also believed K.M. would leave Tran, thus rendering moot any further action on her part. Finally, she did not want to get Tran in trouble by reporting him to police. None of those reasons undermine the claim that Tran's threat was also unequivocal, unconditional and immediate.

We conclude substantial evidence supports the jury's finding that C.W. was in sustained fear after Tran's threat. She already knew of Tran's temper, and that he mistreated K.M, including by pushing her twice such that she almost fell. The jury saw C.W.'s demeanor as she testified, and it could reasonably conclude C.W. believed Tran would carry out his threat because he acted erratically in the two years C.W. knew him. C.W. testified that she was fearful of Tran since he threatened her. She showed M.G. Tran's threatening text message. These facts, considered together, constitute substantial evidence that C.W. was in actual sustained fear following Tran's threat. The offense "does not require an immediate ability or even an actual

9

intention, to carry out the threat." (*People v. Holmes, McClain and Newborn, supra,* 12 Cal.5t at p. 810.)

## II. Jury *Instruction on Attempted Criminal Threat*

Tran contends the court prejudicially erred by failing to sua sponte instruct the jury on attempted criminal threat as a lesser included offense, given that sufficient evidence in the record supported such an instruction.

" ' "[A] trial court must instruct on lesser included offenses, even in the absence of a request, whenever there is substantial evidence raising a question as to whether all of the elements of the charged offense are present." ' " (*People v. Cole* (2004) 33 Cal.4th 1158, 1215.)  " ' "Substantial evidence is evidence sufficient to 'deserve consideration by the jury,' that is, evidence that a reasonable jury could find persuasive." ' " (*Ibid.*)  The reviewing court applies the independent judgment standard of review to the trial court's failure to instruct on a lesser included offense.  (*People v. Waidla* (2000) 22 Cal.4th 690, 739.)

The crime of attempted criminal threat is a lesser included offense of the crime of making a criminal threat.  (*People v. Toledo, supra,* 26 Cal.4th at p. 230.)  "[I]f a defendant, . . . acting with the requisite intent, makes a sufficient threat that is received and understood by the threatened person, but, for whatever reason, the threat does not *actually* cause the threatened person to be in sustained fear for his or her safety even though, under the circumstances, that person reasonably could have been placed in such fear, the defendant properly may be found to have committed the offense of attempted criminal threat." (*Id.* at p. 231.)  In that situation, "only a fortuity, not intended by the defendant, has prevented the defendant from perpetrating the completed offense of criminal threat itself." (*Ibid.*)

10

Here, no intervening fortuity prevented C.W. from being in actual, sustained fear. The facts of this case are materially different than those in *Toledo*, where the victim reported her fear to an investigator but later testified that she was not actually frightened. (*People v. Toledo, supra,* 26 Cal.4th at p. 225.) Under those circumstances in *Toledo,* the attempt instruction was appropriate because there was substantial evidence that the victim was not in sustained fear. By contrast, C.W. was consistent in her claim that she was scared of Tran at all times since she got his text message, and continuing until trial. Accordingly, all the evidence indicated the criminal threat was made, and there was no substantial evidence to merit a jury instruction on mere attempt.

DISPOSITION

The judgment is affirmed.

O'ROURKE, Acting P. J.

WE CONCUR:

CASTILLO, J.

RUBIN, J.

11